## RAILROAD COMMISSION OF GEORGIA *et al. v.* SOUTHERN RAILWAY COMPANY.

1. The discretion of the trial judge in refusing, on motion, to consolidate cases will not be disturbed, unless there is a very plain case of abuse of discretion to the detriment of the movant. Under the circumstances showing the character of the two cases which the court refused to consolidate, upon which ruling error was assigned in this case, even if the judge would have been authorized to consolidate the cases, there was no abuse of discretion in refusing to do so.

2. On the trial of the case upon the issues formed by the petition as amended and the answer and intervention filed by the intervenors in such case, the record and judgment of the court in the other case which the court refused to consolidate with the case on trial were admissible in evidence.

3. This was an equitable suit by the Southern Railway Company against the Railroad Commission of Georgia and certain other persons who intervened as parties defendant, to enjoin enforcement of an order of the Railroad Commission requiring the Southern Railway Company to resume operation of the railroad of the Roswell Railroad Company, alleged to have formerly been operated by the Southern Railway Company and abandoned without having obtained permission from the Railroad Commission as provided in its rules to discontinue operating the road. There was uncontradicted evidence that after passage of the order of the Railroad Commission the Roswell Railroad Company had been placed in the hands of a receiver appointed by the court in another case, and that the railroad and other property of the Roswell Railroad Company were in the possession of the receiver and being administered as assets of the Roswell Railroad Company in winding up the affairs of that company. *Held,* that under such circumstances the judge was authorized, on the final trial of the case, to direct a verdict permanently enjoining the order of the Railroad Commission requiring the Southern Railway Company to resume operation of the railroad.

No. 2715.    SEPTEMBER 30, 1922.

Injunction. Before Judge Ellis. Fulton superior court. April 13, 1921.

The exception is to a judgment directing a verdict for the plaintiff. The action was in equity, seeking to perpetually enjoin an order of the Railroad Commission of Georgia, requiring the Southern Railway Company to resume operation of a railroad which, it was stated, that company had formerly operated and abandoned without consent of the Railroad Commission. The following is a statement of the pleadings: On March 15, 1920, the Town of Roswell located in Cobb County and the Town of Alpharetta located in Milton County, Georgia, filed an application to the Railroad Commission of Georgia, alleging that prior to March 1, 1920, the Southern Railway Company, as a common

carrier of freight and passengers, had operated a railroad about nine and one half miles in length between Roswell and Chamblee, Georgia; but that on the day above mentioned it abandoned operation of the road. The petition contained a prayer that the respondent be required to resume operation of the road. In answer to a rule nisi the respondent denied that it had ever owned or operated the railroad in question, or that it was under any public duty to operate the road; and denied that the Railroad Commission had jurisdiction to require it to operate such road. On the hearing the Railroad Commission màde the following order: "Upon consideration of the record in the above stated case, it is ordered that the rule nisi issued in the same be made absolute, and that Southern Railway Company be and is hereby directed, not later than seven o'clock a. m. Monday, March 29th, 1920, to resume service over and operation of the railroad between Chamblee, Georgia, and Roswell, Georgia, as operated by it on March 1st, 1920, and to continue such service and operation until it shall have been legally authorized to discontinue the same."

On March 27, 1920, the Southern Railway Company instituted an action against the Railroad Commission of Georgia and the individual members of the commission and its secretary, to declare void and to enjoin enforcement of the order of the commission. In addition to all that is stated above, the original petition with the exhibits attached as a part thereof made substantially the following allegations: Petitioner is a corporation created and existing under the laws of the State of Virginia, and engaged in the carriage of passengers and freight, and operating lines of railroad in the State of Georgia. The Atlanta and Roswell Railroad Company was chartered by the State of Georgia, under the act of the General Assembly approved April 10, 1863 (Acts 1862-3, p. 219), for the purpose and with the power of constructing a railroad from the Town of Roswell to the City of Atlanta; said charter was amended by act of the legislature approved October 6, 1870 (Acts 1870, p. 287), and the Atlanta & Roswell Railroad Company, under said amendment, was given the right to construct a railroad from Roswell to some convenient point of connection with the track of the Atlanta & Richmond Air-Line Railway Company; for a considerable period of time after the granting of the charter no work towards the construction of the line

of railroad was done by the Atlanta & Roswell Railroad Company, but shortly prior to the year 1874 it entered into a contract with a certain firm for the construction of a narrow-guage line of railroad from Roswell to Chamblee, which was a station on the line of railroad of the Atlanta & Richmond Air-Line Railway Company. The line was never completed by the Atlanta & Roswell Railway Company, but the contractors in the year 1874 filed a lien upon said railroad and a proceeding in the superior court for its foreclosure. As a result of this proceeding all the properties of the Atlanta & Roswell Railroad Company were sold at public outcry, and the purchasers at such sale, under the laws of this State, reorganized in the year 1880, under the name and style of "Roswell Railroad Company," under an amendment granted by the Secretary of State to the charter of the Atlanta & Roswell Railroad Company. The charter as amended expired in 1910, and has not since been revived. The Roswell Railroad Company received certain aid, when it began completion of the railroad, from the Atlanta & Charlotte Air-Line Railway (successor to the Atlanta & Richmond Air-Line Railway Company), but the line was not completed until the Richmond & Danville Railroad Company leased the properties of the Atlanta & Charlotte Air-Line Railway; and when it did so the Richmond & Danville Railroad Company acquired a beneficial interest in two hundred and one shares of the capital stock of the Roswell Railroad Company, which had been issued to the Atlanta & Charlotte Air-Line Railway, and succeeded the Atlanta & Charlotte Air-Line Railway Company in what was known as a sinking-fund agreement, under which the Atlanta & Charlotte Air-Line Railway Company had indorsed a bond issue of the Roswell Railroad Company to the amount of thirty-five thousand dollars, the two companies agreeing that the Atlanta & Charlotte Air-Line Railway should deposit twenty-five per cent. of the proportion of the gross earnings from all traffic interchanged between the two railroads at Chamblee with a trustee, for the purpose of providing a fund to take care of and ultimately pay off said bonds. The Richmond & Danville Railroad Company became insolvent, and when its properties were sold petitioner acquired its interest in the lines of the Atlanta & Charlotte Air-Line Railway Company and its property, and became a party to said sinking-fund agreement. In the year

1903 the gauge of the Roswell Railroad Company from Roswell to Chamblee was broadened, and a refinancing of said company became necessary. As a result of such refinancing new capital stock was issued by the Roswell Railroad Company, and new bonds were issued to retire the old bonds and to fund certain indebtedness. Petitioner acquired in its own name one hundred seventy-five shares of the new issue of stock, as well as a certain amount of the new bonds. It also acquired a beneficial interest in one hundred seventy-five shares of new stock which were issued to the Atlanta & Charlotte Air-Line Railway, as well as a beneficial interest in certain bonds which were also delivered to the Atlanta & Charlotte Air-Line Railway in retirement of certain old bonds held by that company. Although petitioner became a creditor and stockholder of the Roswell Railroad Company in the manner above set forth, the corporate entity of the Roswell Railroad Company was never in any wise merged either with petitioner or with any of its predecessors; but a separate, distinct, independent corporate organization has always been kept up by the Roswell Railroad, certainly until its charter lapsed and expired. When the Roswell Railroad Company was broad-gauged it did not have sufficient funds or credit to acquire new engines, rolling-stock, and equipment necessary to operate upon the line of railroad; and in this situation petitioner, for a consideration, has furnished the Roswell Railroad Company with the motive power and cars necessary to perform its duties as a carrier of persons and things, and has also furnished it the services of its agents, for a consideration, in conducting its business as a common carrier. This furnishing resulted from a business arrangement between the two corporations, and petitioner never assumed the charter obligations or public duties of the Roswell Railroad Company, and nothing was done in this way to relieve that company of its charter obligations and public duties, or to substitute petitioner as an obligor for the performance by the Roswell Railroad Company of its charter obligations and public duties. Whatever petitioner did in the way of furnishing rolling-stock, motive power, and other carrier facilities, and whatever services its agents rendered in the operation of the Roswell Railroad Company's line, was not through the assumption by it of any public duty or charter obligation devolving upon the Roswell Railroad Company,

but was for the account of said Roswell Railroad Company; the accounts of the Roswell Railroad Company were always kept separate-; it was charged with any indebtedness which it incurred to petitioner, and it has always been credited with any and all earnings which the operation produced; in aiding and assisting it in the manner above set forth the petitioner became from year to year a heavy creditor of the Roswell Railroad Company, for the reason that the operations of the line were always at a loss, the revenues derived from the operation of the line never having been sufficient to pay the interest on its bonds and its operating expenses, with the exception of one year. A statement was attached to the petition as an exhibit showing a net loss of $102,237.03, as the result of the operations of said railroad for twelve years, July 1, 1905, to June 1, 1917, inclusive. On January 1, 1918, the United States Government, through the Director-General of Railroads, took over the operation of the line of the Roswell Railroad Company, as well as the lines of railroad of petitioner, and such Federal operation continued until March 1, 1920. When the United States Government ceased to operate the lines of the Roswell Railroad Company, petitioner conceived that it could no longer justify the rendition of the aid and assistance of the kind and character hereinbefore described, which it had theretofore given to that company in the operation of its line, because, (a) the charter of the Roswell Railroad Company having expired, the corporation became ipso facto dissolved, and its business and assets were subject to be administered by a court of equity for payment of debts and distribution of any balance among its stockholders; (b) the experiences indicated above showed that petitioner's aid had resulted in great loss, and it had become apparent that continuation of such aid would bring about greater losses, and petitioner did not feel justified in diverting its funds to such purposes, they being needed in the performance of its public duties in respect to its own line of railroad; and consequently petitioner did not resume the rendition of aid to the Roswell Railroad as formerly, and that company being unable to carry on its business, trains were not operated over its road after the United States Government ceased to operate its railroad. When this occurred the matter was taken up before the Railroad Commission, and the proceedings before that body resulted in the order which it is

sought to enjoin. The order of the Railroad Commission is illegal, unconstitutional, void, and unenforceable, for the following reasons: " (a) Petitioner does not own the line of railroad from Roswell to Chamblee, and has no lease or other contract which would authorize it to run trains over said line, and is under no obligation, public or private, to operate said line. (b) The charter of the Roswell Railroad Company having expired, its line of railroad and its other properties are the subject-matter of a court proceeding for the distribution of its assets; and there now exist no franchises which would require the operation of said line, either by the Roswell Railroad Company, by petitioner, or by any one else. (c) As hereinbefore alleged, and as shown by the statement attached, said line of railroad cannot be operated except at a great loss. The operating expenses, without regard to cost of betterments, would far exceed the revenues which would be derived from the business done; and this is true without regard to any payment of interest on the bonded indebtedness of the Roswell Railroad Company. The order of the Railroad Commission requiring petitioner to operate said railroad will, if enforced, deprive petitioner of its property without due process of law, contrary to the provision of the fourteenth amendment to the constitution of the United States, that no State shall " deprive any person of life, liberty, or property, without due process of law."

The plaintiff filed an amendment to the petition, alleging that the court had appointed a temporary receiver for the Roswell Railroad Company, and that the receiver had taken possession of all the properties of the company, including the line of railroad above mentioned, between the towns of Roswell and Chamblee, for which reason it was impossible for petitioner to comply with the order of the Railroad Commission. On April 7, 1920, the Town of Roswell filed an intervention in behalf of itself and the citizens generally in the counties of Cobb, Milton, Fulton, DeKalb, and all others interested in having operation of the road resumed. So far as necessary to be stated, the petition for intervention alleged substantially the following: The Southern Railway Company from 1910 and prior thereto operated the road until January 1, 1918. On the date last mentioned the United States Government, by the Director-General of Railroads, took over and operated all the railroad properties of the

Southern Railway Company, including the railroad in question. This continued until March 1, 1920, at which time such properties were returned to the Southern Railway Company. Upon return of the properties the Southern Railway Company resumed operation of the railroad between Roswell and Chamblee, and on the same day, after completing the usual schedules, discontinued operation of trains. Such discontinuance was without permission from the Railroad Commission, and was in violation of a lawful order of the commission dated October 20, 1907, prohibiting railroad companies from discontinuing existing passenger-train schedules, and of General Order Number 14 of the Railroad Commission or Georgia, promulgated December 23, 1919, as follows: " All rates now in effect or which may hereafter become effective, which are not higher than the maximum rates prescribed by this Commission, whether such rates are the result of voluntary action upon the part of any company, corporation, or person subject to the jurisdiction of this Commission, or otherwise, are hereby established as the rates of the Railroad Commission of Georgia; and no such rates shall be discontinued nor raised without the consent of the Railroad Commission first being obtained, but all such rates shall continue in force without hindrance, the same as other rates prescribed by the Commission. And any and all facilities, privileges, or service, now in effect or practiced, or hereafter made effective, extended or practiced, which give, grant, extend, or allow patrons, shippers, or other persons transacting business with said companies, corporations, or other persons as much or more of the privileges, facilities, or service to which they are entitled by law or by any rule, regulation, or order of this Commission, whether such privileges, facilities, or service are given or granted, extended, or allowed as the result of voluntary action upon the part of such companies, corporations, or persons, or otherwise, are hereby established as the requirements of the Railroad Commission of Georgia; and no such privileges, facilities, or service shall be discontinued without the consent of the Railroad Commission first being obtained, but all such privileges, facilities or service shall be given, granted, extended, or allowed without hindrance, the same as other requirements of this Commission; provided that nothing herein contained shall operate as repealing in any way

the provisions of Passenger Rule No. 7." In making defense before the Railroad Commission in the proceeding which resulted in the order sought to be enjoined, the Southern Railway Company made the same contentions as are alleged in the original petition in this action for injunction. It developed on such hearing, and is a fact: (*a*)   That the Southern Railway Company owns in its own right, and as lessee under a perpetual lease, all of the stock and all the bonds of the Roswell Railway Company, and is the sole creditor of that company. (*b*)   Under such circumstances the Southern Railway Company permitted the charter of the Roswell Railway Company to expire and lapse without making any effort to renew it, and after such expiration continued to operate its railroad as a part of the Southern Railway System, issuing Southern Railway bills of lading, returning the property for taxes, paying wages of employees, furnishing equipment, and holding it out to the public as a part of the Southern System. (*c*)   On the faith of such manner of operation, manufacturers, merchants, and other business men established their business in the Town of Roswell. (*d*)   By all such conduct the Southern Railway Company assumed and exercised the franchise of the Roswell Railway Company, and is now estopped from maintaining that the road is not a part of its system.   Other allegations were, that after commencement of this action, and after grant of a temporary injunction by this court, "ordering the status maintained," the Southern Railway Company, in violation of the "letter and spirit" of the order, petitioned this court for a receiver for the Roswell Railway Company, the object being to create an additional excuse to be urged why the order of the Railroad Commission could not be enforced against it.   The receiver was appointed in that case, and the original petition in this was so amended as to include the contention last above mentioned; but the appointment of the receiver was unauthorized and inadvertently made.   All the reasons now urged for enjoining the order of the Commission were made before the Railroad Commission, which was vested with jurisdiction; and the order granted by that body is conclusive. Irreparable injury will result to intervenors if operation of the railroad is not resumed.   The prayer was for discharge of the receiver and denial of injunction.

On April 15, 1920, the Railroad Commission and individual defendants filed answer to the petition, denying the allegations in part, and averring substantially the following: The petitioner has been the owner or controller, as lessee, of all the capital stock of the Roswell Railway Company since 1903; and while there may not have been any formal merger of the Roswell Railway Company with the Southern Railway Company, there has been a practical merger whereby plaintiff assumed complete management and operation of the railroad of the former company, by virtue of the fact that it was owner or controller of all the bonds, securities, and stock of such company, and was the equitable owner of all its properties. The alleged losses in the operation of the railroad were not debts of the Roswell Railway Company, but losses of the Southern Railway Company by its own operation of the road, and that company abandoned operation of the road merely on account of the business being unprofitable under the distribution of rates. Plaintiff operated the road as part of its system from 1903 until it was taken in control by the United States Government, and after the government relinquished its operation plaintiff again operated it on March 1, 1920, by reason of its ownership of all its stock, and then discontinued such operation without consent of the Railroad Commission of Georgia, in direct violation of order No. 14 issued by that body (set out above). The reasons assigned by the plaintiff for discontinuing operation of the road were insufficient; application should have been made to the Railroad Commission for permission to discontinue the services, or for permission to increase its rates; the plaintiff, having assumed operation of the railroad in the circumstances, is in duty bound to continue such operation as a part of its system, and can not excuse itself on the ground that the charter of the Roswell Railway Company has expired. " In its reports to this commission the plaintiff has always embraced this line as a part of its system, and in its sworn report of June 30, 1912, makes the distinct statement that it had operated said railway since Jan. 2, 1903, under a lease which was to run as long as the plaintiff fulfilled its obligation under its lease of the Atlanta & Charlotte Air-Line Railway, which lease has not yet expired. . . Having acquired this road by lease, which has not yet expired, the plaintiff assumed all of the duties of the

lessor company to the public, and should now be compelled to discharge its duties as a common carrier over said railway."

After this answer was filed, the plaintiff filed a second amendment to the petition, alleging that the order of the Railroad Commission which it was sought to enjoin was void and unenforceable, for the reasons: (*a*) It was beyond the power of the Railroad Commission, contained in the statutes conferring powers upon that body, which do not include power to prevent the entire abandonment of all service of every character and kind upon the Roswell Railroad. (*b*) In the receivership case mentioned in the first amendment to the original petition a permanent receiver has been appointed and all the properties of the Roswell Railroad Company are now in the hands of such receiver; and the Atlanta & Charlotte Air-Line Railway Company, a holder of certain stocks and bonds issued by the Roswell Railroad Company, and the Guaranty Trust Company of New York, successor to the Standard Trust Company of New York, and trustee for the bondholders, in a mortgage given by the Roswell Railroad Company, covering its entire line of railroad and all rights, members, easements, and appurtenances, did intervene in such case, and on motion of such intervenors the court, on November 13, 1920, ordered the receiver to sell the railroad with all its properties easements, and appurtenances; and such properties are now in process of being sold, etc.

The case came on for final trial on April 13, 1921, at which time defendants and the intervenor moved that the court consolidate therewith the case of Southern Railway Company v. Roswell Railroad Company, then pending in the court, being the case hereinbefore mentioned, seeking appointment of receiver for the last-mentioned company and distribution of its assets. The motion to consolidate was based on the ground that the receivership case was a mere colorable proceeding intended to furnish the plaintiff with an excuse for not complying with the order of the Railroad Commission. The motion was overruled. Defendants excepted to that ruling. On the further trial voluminous evidence was introduced by both parties, which need not be stated at length. At the conclusion of the evidence the judge, on motion by the attorneys for the plaintiff, directed a verdict perpetually enjoining enforcement of the order of the Railroad Commission,

as prayed. The defendants and the intervenor excepted, assigning error on the following grounds: (*a*)  Under the pleadings and evidence issues of fact were involved that should have been submitted to the jury.  (*b*)  " Under General Order No. 14 of the Railroad Commission of Georgia, the Southern Railway Company, which had been previously operating said Roswell Railroad as a common carrier of freight and passengers, could not discontinue said service without first getting the approval and consent of said commission for the discontinuance of .this service."  (*c*) " The Southern Railway Company is the owner of said Roswell Railroad, having a perfect equity therein by reason of its ownership of all the stock and bonds of the Roswell Railroad Company, and had consolidated said Roswell Railroad with its system of railway, and had long operated the same as a part of its entire system of railway."  (*d*)   " The Southern Railway Company, having consolidated said Roswell Railroad with its lines of railway, and having long operated the same as a part of its system, and having the right, under its charter, to consolidate said Roswell Railroad with its lines of railway, it would not be justified in abandoning the operation of said Roswell Railroad on the ground that it was losing money in its operation, without showing that its entire system, embracing said branch, was not making a fair return on the value of its property, including said branch line.  (*e*) " The court erred in holding that the order of said commission was null and void on the ground that the Southern Railway Company was under no charter obligation and under no other obligation to operate said Railroad, and had the right to abandon its operation because it was losing money in so doing." (*f*)  " The court erred in holding that General Order No. 14 of the Railroad Commission was null and void in so far as it would operate to prevent the Southern Railway from abandoning the operation of· the Roswell Railroad, when it was shown that the operation of this branch line was at a loss."  (*g*)  " Under the act of Congress, known as the ' transportation act of 1920,' the Southern Railway Company could not abandon the operation of the Roswell Railroad without first securing the consent and approval of the Interstate Commerce Commission for its abandonment."  (*h*)   " The court erred in holding that the order of the Railroad Commission, under the pleadings and evidence in this

case, was null and void, and in directing a verdict enjoining the commission from enforcing its said order." Another assignment of error in the bill of exceptions was: "The plaintiff offered in evidence the entire record in the case of the Southern Railway Company against the Roswell Railroad Company, which record is set out in substance in paragraph five of the brief of the documentary evidence in this case, which is contained in exhibit B to this bill of exceptions. Counsel for the defendants and intervenor objected to the introduction of said record, on the ground that it was irrelevant, the court having refused to consolidate that case with this case; that said record threw no light on the question of whether the order of the commission, which was now attacked, was originally null and void, and because nothing which has happened since the passage of said order can effect the validity thereof. The court overruled said objections, and admitted said record; to which ruling the defendants and intervenor then and there excepted, and now except and assign the same as error, and say that the court erred in admitting said record over the objections aforesaid of the defendants and said intervenor."

*James K. Hines, J. Prince Webster,* and *Daniel MacDougald,* for plaintiffs in error.

*McDaniel & Black,* contra.

ATKINSON, J. 1. The first assignment of error is upon the ruling of the trial judge refusing to consolidate with this case another case instituted by the Southern Railway Company against the Roswell Railroad Company, which was a suit for the appointment of a receiver and for administration of the properties of that company in winding up its corporate affairs. The plaintiff in that case sued as a creditor and stockholder of the defendant company. The Civil Code (1910), § 5419, declares: "Where there is one common right to be established by or against several, and one is asserting the right against many, or many against one, equity will determine the whole matter in one action." § 5520, declares: "Suits between the same parties, arising under the same contract, involving the same pleas and upon which the same verdict may be rendered, may be consolidated if the aggregate amount does not exceed the jurisdiction of the court." In *Lewis v. Daniel,* 45 *Ga.* 124, it was held: "It is in the discretion of the judge of the superior court to consolidate two cases sued in

that court into one, on the motion of defendant. Such discretion will not be interfered with unless abused." The exception in that case was to a ruling refusing a motion by the defendant to consolidate two cases brought against him by the same plaintiff, in the superior court. One suit was to enforce an agreement between plaintiff and defendant as partners, whereby the defendant had bound himself in certain contingencies to refund money to plaintiff. The other was a suit on a note given by defendant to plaintiff and for rent collected by defendant for plaintiff. In *Gerding* v. *Anderson,* 64 *Ga.* 304, it was held: " To require the superior court to consolidate three actions on three promissory notes into one, the defendant must make it appear to the court either that he has no defense, or that the defense is the same to all of the notes; and in the latter case he must aver what that defense is, so that the court may adjudge whether it be the same in all the cases." In the course of the opinion it was said: " There can be no doubt of the right of the defendant ordinarily to consolidate, if there be no detriment thereby to the plaintiff on the merits of the cases. To show that there will be no hurt to the plaintiff, defendant must show either that he has no defense or that the same defense applies to all the cases; and in order to show the court the latter fact, he must disclose what that defense is. For it is for the court to decide whether the facts make the defense the same in each case. If the consolidation will work harm to the plaintiff, or if it would make the aggregate sum sued for so large as to oust the jurisdiction, and, on the same principle, if it would make him try different issues on different pleas in one case to several notes, the consolidation will not be allowed." In *Georgia Railroad &c. Co.* v. *Gardner,* 118 *Ga.* 723 (45 S. E. 600), it was held: " Where, pending an action against a railroad company for trespass to land, the company makes application to have the land condemned as the property of the plaintiff in the action for trespass, such application, there being no award made by the appraisers and consequently no appeal from an award, is not such a suit as should be consolidated with the action for trespass. Until an award has been made and an appeal taken therefrom, there is nothing in court to be tried in the condemnation proceeding. Such condemnation proceeding is no bar to the action for trespass, nor is the action for trespass merged in the condemnation proceeding."

In the course of the opinion it was further stated: "Moreover this court is loath to interfere with the discretion of the trial judge in refusing to consolidate cases, unless there is a very plain case of abuse, to the detriment of the defendant." This excerpt from the opinion properly states the rule as applicable in this court in cases which could be legally consolidated. The cases which the judge refused to consolidate, which refusal forms the basis of the assignment of error under consideration, were not between the same parties, and involved issues which had no relation to the other. In the circumstances, even if the judge would have been authorized to consolidate the cases, there was no abuse of discretion in refusing to do so. See also 1 C. J. 1123, 1124.

2. After the refusal to consolidate with the case on trial the other case instituted by the Southern Railway Company against the Roswell Railroad Company for receiver and other equitable relief, the trial proceeded, and the court admitted in evidence the record in the other suit, which included the judgment appointing a temporary receiver of the Roswell Railroad Company and a subsequent judgment appointing a permanent receiver, and an order of the court directing the receiver to sell the railroad of the Roswell Railroad Company. All of this record was offered as evidence to support the allegations of the petition as amended, alleging, as grounds for enjoining enforcement of the order of the Railroad Commission against the Southern Railway Company, that the affairs of the Roswell Railroad Company had been placed in the hands of a receiver and its property was in possession of the court, and it was impossible for the Southern Railway Company to comply with the order of the Railroad Commission requiring the latter company to resume operation of the railroad of the Roswell Railroad Company. The petition was amended in such manner as to allege the grounds of relief just stated, and there was no objection interposed to the allowance of such amendment, or, if any was stated, there was no assignment of error on the ruling allowing the amendment. The evidence was material, and sustained that phase of the plaintiff's case; and the court did not err in admitting the evidence over the objections urged to its admission.

3. The uncontradicted evidence demanded a finding that, in the equity case for the appointment of a receiver of the Roswell

Railroad Company, other creditors had intervened, seeking the appointment of a receiver and marshaling of the assets, and that the judge had appointed a permanent receiver, and under such appointment the receiver had taken possession of the railroad of the Roswell Railroad Company and held it and all other assets of the company as an officer of the court, and that the receiver was proceeding with the administration of the assets of the corporation, in the course of which he had applied for and obtained an order from the court for the sale of the railroad and was proceeding to carry out the order of sale. In these circumstances the Southern Railway Company would have had no power to interfere with the property in the hands of the receiver, and consequently could not comply with the order of the Railroad Commission directing the Southern Railway Company to resume operation of the railroad. This alone would have authorized a direction of the verdict enjoining enforcement of the order of the Railroad Commission. In view of the foregoing it becomes unnecessary to deal with other questions.

*Judgment affirmed. All the Justices concur, except Hines, J., disqualified.*