### COOK *et al. v.* STATE HIGHWAY BOARD OF GEORGIA *et al.*

1. Under the familiar rule that this court will not reverse a refusal of a temporary injunction, where the facts are conflicting, unless the chancellor's discretion is abused, which we do not find, we could affirm the

---

Abatement and Revival, 1 C. J. p. 61, n. 17; p. 75, n. 17.
Eminent Domain, 20 C. J. p. 704, n. 21; p. 874, n. 94; p. 879, n. 77; p. 912, n. 25; p. 917, n. 77, 81; p. 921, n. 15.
Injunctions, 32 C. J. p. 31, n. 17.

judgment below without more; but as important questions of law are raised in the record, and will be involved in the final disposition of the case, we will consider and decide them.

2. Where the State Highway Board instituted a proceeding to condemn lands of the plaintiffs for the purpose of laying out a State-aid road and for securing approaches for the erection of a free public bridge across a navigable river, and where the plaintiffs had previously instituted suit against certain counties to recover damages for taking and appropriating a right of way over their said lands for the same purposes, such condemnation proceeding is no bar to the action for damages, and the action for damages furnishes no ground for arresting the condemnation proceeding.

3. The pendency of a former suit is not a good cause of abatement, unless it is for the same cause of action and between the same parties. The condemnation proceeding involved in this case was instituted in behalf of the State, and not for the Counties of Jeff Davis and Telfair.

4. Such condemnation proceeding could not be brought under the Civil Code, § 640 et seq., which provides a method applicable alone for the condemnation of rights of way for public roads to be laid out by the proper county authorities.

5. The condemnation proceeding in this case was brought under the act of August 14, 1914 (Acts 1914, p. 92), which provides for the condemnation of private property, by the State or the United States, for public purposes.

6. In condemnation proceedings under said act, the venue is in the county in which the land lies; but if the tract of land lies in two counties, such proceeding can be brought in the superior court of either county.

(a) Where under said act a proceeding is brought to condemn a right of way and approaches to a public bridge to be erected by the State Highway Board, over a tract of land belonging to plaintiffs, lying on one side of the river over which said bridge is to be erected, it is not a good objection to said proceeding that the plaintiffs would be entitled to recover damages for their lands lying on the opposite bank of said stream, the proceeding not being instituted to condemn a right of way over said lands.

(b) If this proceeding damaged the plaintiffs by destroying any rights of ferry which they might have over said river, such damages can be assessed in the present proceeding.

7. Under said act of 1914, the State Highway Board can, in one proceeding, condemn a right of way over two tracts of land, one owned by one of the plaintiffs and the other owned by both plaintiffs, such proceeding being one in rem and not against individuals. In such a proceeding all persons interested will be allotted the damages to which they are respectively entitled.

8. There is no merit in the other assignments of error in this case.

No. 5007. April 13, 1926.

Petition for injunction. Before Judge Highsmith. Jeff Davis superior court. June 24, 1925.

On April 24, 1925, I. L. Cook and J. Clyde Wilcox filed their petition in Telfair superior court against Telfair County and Jeff

Davis County, in which they made the following allegations: The dividing line between said counties is the Ocmulgee river. Said stream is a navigable one along the boundary line of these counties. A short distance east of the bridge of the Southern Railway across said river, petitioners own and operate a ferry. They operated it for seven years prior to the filing of this petition. They own the land where said ferry is located. This land is especially valuable for the erection and maintenance of a bridge and ferry across the river. It is also convenient for loading freight upon boats that ply the river. It has on it a spur-track from the main line of the Southern Railway to the river, for the purpose of carrying freight to and from the river. It is convenient for storing thereon heavy freight for river transportation. For bridge and ferry purposes said land really constitutes one tract; for no ferry could be maintained by the owners on the northern portion without the consent of the owner of the southern portion thereof, and vice versa. There has never been any public road through said tract of land, but there has been a private road kept up and worked by petitioners from said ferry across their land to the public road running into Lumber City on the north, and there has been for many years a private road running from their ferry on the south across their land to the public road that runs into Hazlehurst on the south. The public at large has made use of the private roads maintained by petitioners for the purpose of passing from the north side of said river, where there is a public road, to the south side thereof, where there is a public road. There are no other means at said point of crossing said river by the public. For the past seven years they have continuously maintained on their land a ferry across the river, operated for toll, the same being the source of considerable profit. Petitioners and others before them have maintained and operated said ferry for toll for more than 25 years prior to the filing of this suit. During said period no other bridge or ferry across said river has been maintained or operated within seven miles of said ferry on said river. Said ferry yields a net annual income in excess of $9,600. Traffic has been increasing and will continue to increase over the said crossing, whether by bridge or ferry, and the value of said land for ferry and bridge purposes will steadily increase. About June 2, 1924, the Counties of Telfair and Jeff Davis agreed to establish

and maintain over their said land and across said river at Lumber City a county-line bridge, including approaches thereto for the purpose of reaching said bridge. Said counties duly ordered the establishment of said bridge and approaches.

About June 2, 1924, it was duly arranged between said counties and the State Highway Board of Georgia, that both State and Federal aid would be given to said counties in the construction of said bridge and approaches, and that said road and bridge would become a part of the system of State-aid roads. It became the duty of said counties to provide the right of way for said road and said bridge, and they duly agreed to furnish at their expense the right of way. In pursuance of this agreement, Federal project #10, for the erection of said bridge and approaches, was duly advertised in the official organs of said counties. In pursuance of said advertisement bids were submitted to the State highway department on July 2, 1924. Thereafter a contract was duly entered into by the State highway department with Hardaway Contracting Company for the building and maintenance of said bridge and approaches. Pursuant to said contract said counties have entered upon said land of petitioners, and have laid out a road across the same. Defendants have entered upon and have appropriated said land for the use and benefit of the public. They have removed the timber upon an 80-feet wide strip across the same, and have laid out and marked thereon their road. Said Hardaway Contracting Company has begun the erection of the bridge where the contemplated road crosses the river, and has begun laying the foundation for such bridge, and is continuing the work of its erection. Said bridge across said river is to be operated as a free bridge for the use of the public. Said counties have taken and are holding exclusive possession of said strip of land for said purposes. Said counties have not, either jointly or separately, agreed to pay petitioners any sum whatever for said land, or for any other rights therein, and never instituted any legal proceedings for the purpose of condemning said land, but have taken and appropriated it for the uses aforesaid. Petitioners did not consent to the taking of their land and said rights, but objected thereto; but they entered no legal proceedings to prevent such taking of their said land and rights for public purposes, because said counties were solvent and able to respond for any dam-

ages sustained by them. The erection and maintenance of said public road and bridge will entirely destroy the value of their said lands as a ferry and bridge site, and entirely destroy the value of their said ferry. A portion of said land lying south of and adjoining said river on the north is at present being used, and has for many years been used for crossing purposes and for storing goods for transportation on the boats on said river. The rental derived from said use is $200 per annum. Said rental value for said purposes will increase as the traffic on said river continues to increase. The erection and maintenance of said bridge by said counties will completely destroy the value of said property as such loading place. The actual value of the land taken from petitioners, exclusive of its value as a bridge and ferry site, and exclusive of its value as a loading place on said river, is the sum of $200. The actual value of said land as a bridge and ferry site, exclusive of its value for other purposes, is $73,000; and the value as a loading place for said river, exclusive of its value for other purposes, is $1,800. By their said acts said counties have damaged petitioners in the sums just stated. Petitioners have no adequate and complete remedy at law by statutory proceedings to assess their damages. They pray (a) that they be allowed to maintain this suit and have their whole damages assessed therein; (b) that they have judgment for the damages as aforesaid; and (c) for process.

On May 27, 1925, the State Highway Board, in behalf of the State of Georgia, filed in Jeff Davis superior court proceedings against I. L. Cook as owner, and others as holders of encumbrances, for the condemnation of a portion of said land in said county, to be used as a part of the right of way of the State and Federal-aid road through said county, and for material to be used in the construction of said road. In its petition this board alleges as follows: There is a public road leading from Hazlehurst, the county-seat of Jeff Davis County, to the Ocmulgee river, which is the dividing line between the Counties of Telfair and Jeff Davis, and said road has been a public road for a long period of years, having been graded, improved, repaired, and maintained by said county for a number of years, and has been in the constant use of the public as a highway for more than 15 years. Said highway department has designated said road as a portion of a State-aid road connecting the county-seat of Jeff Davis County at Mc-

Rae, the county-seat of Telfair County, said public road being merely a portion of a continuous public road leading from Hazlehurst to McRae, and has been since such designation a part of the system of State-aid roads in Georgia. The County of Telfair, with the consent and by direction of the State highway department, with aid supplied by the Federal government through the State department has already constructed the road aforesaid from the county-seat of Telfair County to a point a little more than a mile from said river, in furtherance of the general plan of the highway department to construct said State-aid road between said county-seats. For a period of years past there had been no way in which those using the public road between said county-seats could pass from one county to the other, except on a flat; and during freshets in the river, varying in duration, it is impossible for any one to cross said river, on account of the overflow of said lands on each side of said river, which renders it impossible for vehicles to reach the channel of the river; and on some occasions the travel on said road is delayed for the reason that only a limited number can be carried across said stream on the flat in a stated time. The flat now being used for transportation of the public across said river is being operated by a licensee of the County of Telfair as a county-line ferry-boat, at a point below where the public road in Jeff Davis County intersects said stream. For the purpose of supplying the public with a safe, prompt passage over said river and over said swamp lands adjacent thereto at all times of the year, and for the purpose of extending the construction of said State-aid road to the county-seat of Jeff Davis County, it has been determined by the State highway department to grade said public road on both the north and south sides of the said stream, and to erect and maintain one main bridge over said stream, and across the deeper portions of said swamp land other small bridges where it will be necessary. The engineering department of the State highway department has determined upon a relocation of a portion of said road in Jeff Davis County, and the department has caused a resurvey of said road to be made, and has relocated the same, beginning at the river and running in a southeastern direction towards Hazlehurst to a point where said relocated portion of said road intersects with the present public road of Jeff Davis County, and has determined to increase the width of the

present public road from the point where the relocation intersects the same with what are known as Stations 57 and 37 on the plans of said bridge. The relocation of said road and the increase of its width would not interfere with the passage of the public from the present road to the ferry landing on said stream. All the owners of land through which said road has been relocated and widened have consented thereto, except I. L. Cook, who is the owner of fractional lot of land No. 430 and the south half of lot 427 in the first district of said county. The petition then describes the portion of the lands of Cook which will be taken in the relocation of said public road and the building of said bridge. The right of way of the State-aid road over land lot No. 427 of said Cook includes the present public road, but the width of the right of way has been widened through a portion of the said lot of land for the purpose of obtaining material for fills and embankments. The highway department purposes to secure the entire title to all interests in said property so sought to be condemned for the purpose of a right of way, for bridges and embankments, and to secure material for the construction and maintenance of said road.

Thereupon I. L. Cook filed his petition in Jeff Davis superior court, against the State Highway Board and Jeff Davis County, in which he recites the filing and pendency of the petition above set out in the present statement, sets out the condemnation proceedings brought by the State Highway Board, against the parties therein named, including I. L. Cook, and alleges as follows: The land involved in said first suit is a portion of the same land described in said condemnation proceeding. Said condemnation proceeding purports to be filed in behalf of the State, but is really filed in behalf of Jeff Davis County; because, notwithstanding the said highway board is given certain authority to exercise the right of eminent domain in acquiring land for public roads, under the law the counties are required to furnish the State Highway Board of Georgia, free of all charge, all rights of way forming part of State-aid roads. Under the facts and for the reasons set forth in the first suit, there is no adequate and complete remedy by any statutory proceedings whatever to assess the damages alleged to have been sustained by Cook and Wilcox. Said condemnation proceeding is void, because, while purporting to be brought by the State Highway Board for the State, it is in reality a suit brought

for the County of Jeff Davis. Said suit is brought under the provisions of the act of 1914 (Acts 1914, p. 92), which was passed at a time when there was no such highway board; and when thereafter the highway board was organized under the later act, it was given the power to exercise the power of eminent domain in procuring land for the purpose of building roads to become a part of the State-aid roads of the State. There is no reason for the bringing of said second suit, even if it were legal; because there is absolutely no dispute as to the ownership and possession of all the land which the State Highway Board is seeking to condemn, and no uncertainty regarding the same. There has been no dispute as to the title of the owner of said land, nor any reason why any part of the lands of Cook should not be condemned under proper condemnation proceeding, except as to the tract of Wilcox and Cook. Nor is there any reason why said defendants should not all be joined in said action. For the reasons set forth in said first suit, it is impossible for petitioner to have properly assessed his damage as to that portion of the tract of land aforesaid belonging jointly to himself and Wilcox, involving not only the actual value of the land for ordinary purposes, but also its value as a whole for a bridge and ferry site. For the purpose of having his damage assessed as to that portion of said land belonging to Wilcox and himself, it is necessary that the first suit should be pressed to its proper determination, and said condemnation proceeding ought not to be maintained. If the condemnation proceeding is allowed to be maintained, his damage will be irreparable, in that he can not recover in said suit the full value of his land, because in said second suit he could not recover the value of the tract of land as a bridge site and ferry site; and if said land held jointly with Wilcox is condemned in said proceeding, he will thereafter be unable to proceed with his said first suit. Petitioner prays: (1) that the said second suit be declared null and void; (2) that said second suit be abated; (3) that the County of Jeff Davis and the Highway Board of Georgia be enjoined from taking any further action on said condemnation proceeding; and (4) that if the court should be of the opinion that said condemnation proceeding is maintainable, petitioner prays (a) that said condemnation proceeding be enjoined in so far as it concerns that portion of land described in the second suit which belongs to Wilcox and peti-

tioner, (b) that process issue, directed to the said State Highway Board and said Jeff Davis County, and (c) for general relief. Wilcox intervened and was made a party plaintiff.

The defendants demurred upon the grounds: (1) that it does not appear that this court has jurisdiction of said cause against the State Highway Board of Georgia, or against Jeff Davis County, or against both defendants jointly; (2) that there appears no reason for the intervention of a court of equity; (3) that the plaintiff has a complete and adequate remedy at law against the defendants and either of them; and (4) that the plaintiff is not entitled to the relief sought. In its answer the State Highway Board denies that the county has taken possession of plaintiff's land for the purpose of erecting a bridge thereon; and denies the statement of facts in the first suit. It admits the institution of the condemnation suit by the State Highway Board, and that the land involved in the first suit is a part of the land described in the condemnation proceeding. It denies that the condemnation proceeding was filed for and in behalf of Jeff Davis County, and that under the facts set forth in the first suit plaintiff is without an adequate and complete remedy by statutory proceedings to have his damages assessed. It denies that the condemnation proceeding is void, but admits that it was brought under the act of 1914. It denies that there was no reason for the bringing of the condemnation proceeding, that under the law it is impossible for the plaintiff to have properly assessed his damages as to that portion of the land belonging jointly to himself and Wilcox, and that it is necessary for the purpose of having such damages assessed that the first suit should be tried. It avers that the allegations of the condemnation suit are true; that the State Highway Board is proceeding to condemn this land as a part of the right of way of a State-aid road, the title to be vested in the Highway Department of the State; that such action has been taken for the benefit and purposes of said department; and that the land to be condemned is to be put to the uses and purposes provided by law for State-aid roads.

The county in its answer makes similar admissions and denials. It further alleges, that it had no connection whatever with the laying out, fixing, locating, and establishing, of the right of way for the road-bed and bridge referred to in the petition; that

while it was the duty of the county to pay for all rights of way, it has not taken any portion of the lands of plaintiff, nor made any effort to do so, nor has it removed any timber or anything else from said land of petitioner or of Wilcox, has had absolutely nothing to do with the said right of way over the lands of petitioner, or of the taking of the same for road and bridge purposes, and has not in any respect given any direction to said board for the location and construction of said road and bridge, nor was the action for condemnation instituted at the direction or for the benefit of the county, but it was done by the State Highway Board for its own benefit and for the purpose of condemning said land for the uses and purposes of the board as a right of way for a State-aid road, title to which is to be vested in the highway board, and not for the uses and purposes of the county.

The hearing of the application for a temporary injunction was submitted, without the introduction of evidence, upon the petition and answers, and upon the following agreed statement of facts: "(a) The road from the county-site of Telfair County to the county-site of Jeff Davis County, crossing the Ocmulgee river at the Lumber City Ferry referred to in the petition, is a State-aid road. (b) In locating the site of the bridge to be constructed across the river at that point and the approaches thereto, the State highway board for said purposes entered upon the land of plaintiffs described in the petition and sought to be condemned, and the bridge is being constructed and the approaches to the bridge laid out over said lands of plaintiff by the State Highway Board. (c) Plaintiffs are the owners, in the manner and to the extent claimed by them in their original petition and amendments thereto, of the land on both sides of the river upon which the bridge and the approaches are located, and also of a ferry and ferry franchise. No more land was taken in possession or is sought to be condemned than is authorized, if the condemnation proceeding sought to be enjoined is authorized and not subject to injunction for reasons claimed by plaintiffs."

The court denied the temporary injunction prayed for. To this judgment the plaintiffs excepted. The errors assigned are: (a) that the court erred in refusing said injunction, because the highway board and the counties had, prior to the filing of the condemnation proceeding, taken for road purposes the same land and

retained full possession thereof, and for like purposes had taken other land on the north side of the river in Telfair County and retained full possession thereof, and had begun the erection of a free public bridge across said river between the said two parcels of land; that the plaintiffs were the owners of and operated a ferry across the river on said lands for toll and had a proper franchise therefor, and they owned the land on both sides of said river; they had filed their suit in Telfair superior court against both counties, to recover the value of their land so taken by both counties, which suit was still pending, by reason of which full and complete jurisdiction to try all issues was first vested in Telfair superior court, and for which reason the condemnation proceedings in Jeff Davis County should have been enjoined; (b) that plaintiffs are entitled to recover damages for the land lying on both sides of the Ocmulgee river, including its value as a ferry and bridge site, which measure of damages can not be applied in such condemnation proceedings in Jeff Davis superior court; (c) that the damages are to both tracts jointly, including the value for ferry and bridge site, and plaintiffs are entitled to recover the whole value in their suit pending in Telfair superior court; (d) that the damage to the plaintiffs was caused by the joint act of both counties, and plaintiffs are entitled to maintain their action against both of said counties jointly, as filed in Telfair superior court; (e) that there is no statutory condemnation proceeding to condemn land in one county where such land lies both in said county and in an adjoining county separated therefrom by a navigable river, the land as a whole having a value as a bridge and ferry site, and being owned on both sides of the river by the same persons, the law contemplating condemnation proceedings in each county for each separate tract of land; (f) that the granting of said injunction was required in order to avoid a multiplicity of suits; (g) that said condemnation proceeding was not brought for the benefit of the State, but for the benefit of Jeff Davis County, and, being brought under the provisions of the act of 1914, the court is without jurisdiction to maintain the same, and it is void; (h) that if jurisdiction was given by said act of 1914 to the said State Highway Board to condemn land for the State, to be used as a State-aid road, it appears that the condemnation proceeding was an endeavor to condemn two separate tracts of land alleged to

be owned by Cook, there being separate liens against each of said tracts, and the said liens not being tax liens; there is no dispute as to the title, nor any other reason provided by the terms of said act of the legislature whereby jurisdiction is conferred on Jeff Davis County to try said proceeding; (i) that the remedy for the condemnation of land for the purposes of laying out a new road as in this case is that provided in section 640 et seq. of the Code of 1910; and (j) that the plaintiffs have no adequate and complete remedy, under the circumstances of this case, to obtain their full measure of damages of every character, except by the suit filed against Telfair County and Jeff Davis County, in Telfair superior court, and to allow said condemnation proceedings to be carried out will deprive plaintiffs of their full measure of damages.

*L. C. Harrell* and *Hal Lawson,* for plaintiffs.

*S. M. Smith, J. C. Bennett,* and *W. S. Mann,* for defendants.

HINES, J. (After stating the foregoing facts.)

1. On the hearing of the application for a temporary injunction the case was submitted to the judge upon the petition, answers, and an agreed statement of facts. The petition and answers were duly verified. In the answers the material allegations contained in the petition in the suit filed by plaintiffs in Telfair superior court, and in the petition in the present case, were denied. In these circumstances the trial judge was authorized to find that Cook and Wilcox had no such cause of action as they seek to assert in their suit in Telfair superior court, and no such cause of action as they undertake to enforce in the present suit. Under the familiar rule that this court will not reverse a refusal of a temporary injunction, where the facts are conflicting, unless the chancellor's discretion is abused, which we do not find, we could affirm the judgment below and leave the case there; but as important questions of law are raised in the record, and will be involved in the final disposition of the case, we shall proceed to examine and pass upon them.

2. Where the State highway board instituted a proceeding to condemn lands of the plaintiffs for the purpose of laying out and building a public road thereon and a free public bridge across a navigable river, and where the plaintiffs had previously instituted a suit against the counties which will be connected by such bridge, to recover damages for taking and appropriating a right of way

over their said lands for the same purposes, such condemnation proceeding is no bar to the action for damages, and the action for damages is not ground for arresting the condemnation proceeding. *Georgia R. &c. Co.* v. *Gardner,* 118 *Ga.* 723 (45 S. E. 600) ; *Railroad Commission* v. *Southern Railway Co.,* 154 *Ga.* 297, 309 (114 S. E. 335). The pendency of a former suit is not a good cause of abatement, unless it is for the same cause of action, and is between the same parties. Civil Code (1910), § 5678. From the above it follows that the pendency of the action for damages brought by the plaintiffs in Telfair superior court against the Counties of Telfair and Jeff Davis, for the wrongful taking and appropriation of a right of way over their lands for a public road and for a free public bridge, does not prevent the subsequent proceeding brought by the State highway board to condemn their land for the same purposes.

3. The main and controlling question in this case is, whether the State acted for itself or whether it acted for the Counties of Jeff Davis and Telfair, in bringing the condemnation proceeding sought to be enjoined by the plaintiffs in this case. It is earnestly insisted by counsel for the plaintiffs that this proceeding was brought in behalf of the counties and not in behalf of the State. It is expressly denied by the defendants in their sworn answers that this proceeding was instituted by the State highway board in behalf of the counties. They expressly assert that it was brought in behalf of the State. But counsel for plaintiffs insist that, notwithstanding this denial, as a matter of law this proceeding is one in behalf of the counties, and not one in behalf of the State. This brings us to determine whether, under the law, this proceeding was brought in behalf of these counties. It does not purport to be so brought. Does the law make it a proceeding for and in behalf of these counties? The argument in favor of an affirmative answer to this question is based upon the provisions of law which we will now notice. The road authorities of the respective counties are required to furnish free to the State highway board all necessary rights of way for the designated roads in each county, constituting any portion of the system of State-aid roads. Acts 1919, p. 251; 8 Park's Code Supp. 1922, § 828(uuu). No road shall become a part of said system of State-aid roads until the same shall be so designated by the State highway board by written

notice to the county road authorities concerned. Acts 1919, p. 247; 8 Park's Code Supp. 1922, § 828(ooo). When any portion of a State-aid road is thus taken under the jurisdiction of the State highway department, the county or counties in which said portion is located shall not thereafter be required to levy taxes for the construction or maintenance of said portion, or to use any of its funds or road forces in the construction or maintenance thereof. Acts 1919, p. 248; Acts 1921, p. 199; 8 Park's Code Supp. 1922, 828(ppp), prov. 5. It is not a fair deduction from the above provisions of the law that this proceeding is brought in behalf of the counties. The fact that the proper county authorities are required to furnish rights of way, free to the State highway board, does not prevent that board from condemning rights of way for State-aid roads whenever the county authorities fail or refuse to furnish said rights of way. This provision may make the counties liable for expenditures incurred by the State highway board in acquiring these rights of way; but it does not bar this board from proceeding to condemn rights of way. The provision that no road or portion thereof shall become a part of the system of State-aid roads until so designated by the State highway board did not prevent that board from instituting this condemnation proceeding. On the contrary, the acts creating the State highway board, and amendatory thereof, authorized this proceeding.

A system of State-aid roads "for the purpose of interconnecting the several county-seats of the State" has been created. These roads "shall be designated, constructed, improved, and maintained by the State, under the State highway department." Acts 1919, p. 247; 8 Park's Code Supp. 1922, § 828(kkk). The State highway board is empowered and required "to designate, improve, supervise, construct, and maintain a system of State-aid roads, provided that no road shall become a part of said system until the same shall be so designated by the State highway board by written notice to the county road authorities concerned." Said board is empowered and required "to provide for surveys, maps, specifications, and other things necessary in designating, supervising, locating, improving, constructing, or maintaining said State-aid roads, or such other public roads as may be provided" under the above act. Acts 1919, p. 247; 8 Park's Code Supp. 1922, § 828(ooo). "The State highway board shall have authority to plan and con-

7

struct, improve, and maintain said State-aid roads in any manner they may deem expedient, by free labor, by contracts, or by any other method or combination of methods, in their discretion. In so doing said highway board is hereby authorized and empowered to condemn and acquire a right of way not exceeding 100 feet in width for maintaining, improving, and constructing said State-aid roads." Acts 1919, p. 250; 8 Park's Code Supp. 1922, § 828(sss). "The State highway board, acting for and in behalf of the State, is hereby authorized and empowered to exercise the right of eminent domain in the condemnation of rights of way and property thereon for the use of the system of State highways, where the county fails to furnish such right of way, and nothing herein contained shall interfere with the lawful right of counties to condemn for road purposes, even though such condemnation shall be for the establishment of a portion of the system of State-aid roads." Acts 1919, p. 252; 8 Park's Code Supp. 1922, § 828(bbbb). Under these provisions of law for a system of State-aid roads, the highway board is authorized to "construct and maintain these roads." That board has the right "to exercise the right of eminent domain in the condemnation of rights of way and property thereon for the use of the system of State highways, where the county fails to furnish such right of way." In constructing, improving, and maintaining said State-aid roads the highway board is "authorized and empowered to condemn and acquire a right of way not exceeding 100 feet in width." Thus we have a full and complete State method of laying out, constructing, and maintaining State-aid roads. The State highway board is given full authority and power to condemn rights of way for these roads. Under these provisions of law, it can not be said that the condemnation proceeding in this case was brought for and in behalf of the county and not in behalf of the State. Thus one of the main contentions of the plaintiffs is without merit.

4. It follows, from the principle announced in the foregoing division of this opinion, that the contention of counsel for plaintiffs that this condemnation proceeding could only be brought under the Civil Code, § 640 et seq., and not under the act of 1914, is not well taken. When the county road authorities seek to lay out a new public road, they must pursue the method laid down in the Civil Code, § 640 et seq. Whenever a public road is already

established, and it becomes necessary to condemn land for the purpose of grading, improving, turnpiking, paving, widening, or macadamizing the same, for the use and convenience of the public, the county authorities must pursue the method laid down in the Civil Code, § 5243.  But when the State highway department wishes to condemn land for rights of way for State-aid roads, it is not required to, and can not, pursue either of the above methods. *Lee County* v. *Smithville,* 154 *Ga.* 550 (3) (115 S. E. 107).   In *Mitchell County* v. *Hudspeth,* 151 *Ga.* 767 (108 S. E. 305), "the county authorities on each side of the stream joined in proceedings to condemn a certain amount of plaintiff's land under the Civil Code (1910), § 5206 et seq., for the purpose of building a public free bridge across the river, and laying out public roads on each side thereof as approaches thereto."  In that case this court held that as there was no compliance with § 640 et seq. of the Civil Code of 1910, the plaintiff was entitled to an injunction enjoining the counties from proceeding with the condemnation proceeding. In that case the condemnation proceeding was brought by the counties.  In this case the proceeding was brought by the State highway board in behalf of the State.

5.  The condemnation proceeding in this case was brought under the act of 1914.  Acts 1914, p. 92; 4 Park's Code, §§ 5246(a), 5246(i).  It is insisted by counsel for the plaintiffs that, if this act of 1914 applies to a case where the State highway board is undertaking to condemn a right of way for a State-aid road, the facts of the present case do not bring it within the purview of that act. The first section of that act is as follows:  "Whenever the State of Georgia or the United States shall desire to take or damage private property in pursuance of any law so authorizing, and shall find or believe that the title of the apparent or presumptive owner of such property is defective, doubtful, incomplete, or in controversy; or that there are or may be persons unknown or nonresident who have or may have some claim or demand thereon, or some actual or contingent interest or estate therein; or that there are minors or persons under disability who are or may be interested therein; or that there are taxes due or that should be paid thereon; or shall, for any reason, conclude that it is desirable to have a judicial ascertainment of any question connected with the matter; such government may, through any authorized representa-

tive, either in term time or vacation, petition the superior court of the county having jurisdiction, for a judgment in rem against said property, condemning the same to the use of the petitioner upon payment of just and adequate compensation therefor to the person or persons entitled to such payment." Acts 1914, p. 92; 4 Park's Code, § 5246 (a). This State, under this statute, can bring thereunder a condemnation proceeding when it "shall, for any reason, conclude that it is desirable to have a judicial ascertainment of any question connected with the matter;" and "may, through any authorized representative, . . petition the superior court of the county having jurisdiction for a judgment in rem against" the property sought to be condemned, "condemning the same to the use of" the State "upon payment of just . . compensation therefor." This language is exceedingly broad. It authorizes the proceeding in this case, under the facts thereof.

6. The next contention of the plaintiffs is that they are entitled to recover damages for their lands lying on both sides of the river, and that they can not recover all these damages under the condemnation proceeding instituted by the State highway board in Jeff Davis superior court. The act of 1914 provides that the proceeding shall be brought in the superior court of the county having jurisdiction. In condemnation cases the venue is in the county in which the land lies. If a single tract of land sought to be condemned lies in two counties, the condemnation proceedings may be had in either. It would be impracticable to have two condemnations where a right of way over an entire tract of land is sought to be taken. In such a case the tract of land is a unit, and its value can be more accurately arrived at by condemning it as a unit. 10 R. C. L. 206, § 176. So this court held that where land sought to be condemned under the Civil Code (1910), § 5206 et seq., is partly located in two counties, the proceeding could be had in either county. *Whitney* v. *Central Georgia Power Co.,* 134 *Ga.* 213 (67 S. E. 197, 19 Ann. Cas. 982). While in that case this court was dealing with a different statute, the principle therein announced is equally applicable when the proceeding is had under the act of 1914. So in this case, if the proceeding had been brought in Jeff Davis superior court to condemn a tract of land of the plaintiffs, lying on both sides of the river, the proceeding could have been properly brought in the su-

perior court of Jeff Davis County. But in this case the proceeding was not brought to condemn a right of way over a tract of land lying on both sides of the river. It was brought to condemn a right of way over a tract lying on one side of the river. It was a proceeding in rem, and not in personam. Its purpose was to condemn a right of way over this tract of land for a public road and approaches to a bridge to be constructed by this board over the Ocmulgee river. Of course the highway board could not condemn a right of way over their lands on the opposite side of the river under this proceeding, and would not be entitled to such right of way by any judgment of condemnation obtained therein. Before they could acquire such right of way, they would have to acquire the same by purchase or by condemnation proceeding. The fact that the board did not have such right of way, and had not taken steps to condemn a right of way over the lands of the plaintiffs on the opposite bank of the stream, would in no way prevent it from prosecuting the present condemnation proceedings in Jeff Davis superior court. The fact that plaintiffs would be entitled to damages, if the board condemned their land on the opposite side of the river, would in no way preclude it from pressing the present condemnation proceeding.

7. The plaintiffs next insist that in this condemnation proceeding the highway board is seeking to condemn a right of way over two tracts of land, one owned by Cook and the other owned by Cook and Wilcox, and that this can not be done in one proceeding. It must be borne in mind that while this proceeding was brought to condemn a right of way across two tracts of land, it was brought to condemn lands alleged to belong to Cook alone. It is alleged that the two tracts are the property of Cook. While the tracts are thus alleged to belong to Cook, the proceeding was one in rem, and sought a judgment in rem condemning a right of way over these two tracts of land. We see no good reason why, if the proceeding had been one in personam, the board could not proceed to condemn a right of way over two tracts of land belonging to the same person. So when the proceeding is in rem, we see no valid reason why it can not proceed against two tracts of land. The very purpose of the proceeding in rem is to bind all parties who may have any interest in the res. If in such proceeding two tracts are alleged to belong to one individual, but it

develops that one tract belongs to such individual, and the other tract belongs to such individual and another jointly, this situation would not bar the proceeding. For instance, if the board desired to condemn a right of way over various land lots alleged to be the property of an individual, we see no reason why such right of way could not be condemned in a single proceeding. The board would not be required to proceed against each land lot. So, if it should develop, in the proceeding to condemn a right of way over designated land lots alleged to be owned by a single individual, that such individual and another owned jointly one of the land lots, this fact would not render the proceeding void, and would not bar the board from proceeding with the condemnation proceeding. The purpose of the proceeding in rem is to condemn the rights of all persons interested therein. In such a proceeding all persons interested will be awarded the damages to which they are respectively entitled. While this point is discussed in the brief of counsel for plaintiffs in error, we do not find that it is raised in any of the assignments of error in the judgment of the court below; and this furnishes a reason why the judgment should not be reversed.

8. We do not find that there is merit in any of the other assignments of error in this case.

*Judgment affirmed. All the Justices concur.*