## CHESTATEE PYRITES COMPANY *v.* CAVENDERS CREEK GOLD MINING COMPANY.

1. A corporation chartered under the laws of another State can not exercise the right of eminent domain in this State without the consent of the legislature expressly given.
2. Sections 650-657 of the Political Code, giving to private mining corporations the right of eminent domain, even if constitutional, apply only to corporations chartered within this State.
3. Under the facts of the present case, the remedy at law was not as complete as the one in equity.

Argued December 7, 1903. — Decided January 13, 1904.

Petition for injunction. Before Judge Kimsey. Lumpkin superior court. November 10, 1903.

*W. A. Charters* and *H. H. Perry*, for plaintiff.
*H. H. Dean, J. W. H. Underwood,* and *R. H. Baker*, for defendant.

SIMMONS, C. J. The Chestatee Pyrites Company filed an equitable petition against the Cavenders Creek Gold Mining Company. The petition alleged that the plaintiff owned and possessed certain tracts of land through which ran the Chestatee river ; that it had developed on said land, at great expense, a pyrites mine from which it was actually engaged in taking out ore; that it had purchased the land on both sides of a large water-power in the Chestatee river, a non-navigable stream, owned this water-power, and had also purchased the right to overflow the adjoining lands by the erection of a dam in this stream ; that it had purchased this water-power for the purpose of developing and working its mine; that the Chestatee river is partially formed by four named streams which empty into it above the plaintiff's land and augment the waters of the river which flow over plaintiff's lands. The plaintiff also alleged that all of the water is essential to the proper operation of its mine, but that the defendant, a corporation chartered under the laws of North Carolina, had bought lands above the property of plaintiff, for the purpose of operating a gold mine, and had given notice that it would proceed under the Political Code, § 650 et seq., and Civil Code, § 4685, to condemn the water in the four tributary streams above mentioned and divert it from the river by means of ditches and canals to its mine, returning it to

the river below the land of plaintiff, and had fixed a date for arbitrators to meet to pass upon the necessity for such condemnation and the amount of damages to the plaintiff. The petition charged that the defendant was a foreign corporation, and had no power or authority, under the code and the acts amendatory thereof, to condemn private property for its own use. It further alleged, that, even if the code applied to foreign corporations, the sections under which the proceedings were to be had were unconstitutional, that these sections sought to give the power to condemn for a private use and not for a use by the public. The answer admitted that the defendant was a corporation organized under the laws of North Carolina, but insisted that the code sections apply as well to foreign as to domestic corporations. The view we take of the case renders it unnecessary to decide upon the validity of these code sections.

1. The right of eminent domain is a sovereign right of the State. It is inherent in every sovereignty, and existed before constitutions were adopted. It lies dormant until the legislature sets it in motion. As the legislature can not in every case supervise the condemnation, it may confer the power upon agencies. These agencies may be individuals or corporations, and the legislature may even confer this power upon foreign corporations or individuals living in another State. The power thus conferred is always to be strictly construed, and will not be permitted to be exercised except where it is affirmatively granted. Its grant is in derogation of common right, and is the exercise of one of the highest of the powers of sovereignty. Where, therefore, a private individual or corporation seeks to take the property of another under the power of eminent domain, affirmative authority for the exercise of the power must be shown. The power may be conferred either by a special act creating the corporation or by general acts relating to all corporations of designated classes. If a foreign corporation undertakes in this State to condemn private property, it must show legislative authority to do so. We have searched the authorities diligently to ascertain if any court has ever decided that a foreign corporation could exercise the right of eminent domain without legislative authority from the State wherein it proposes to exercise the right, and have been unable to find a single case so holding. All the courts seem to hold that this right of emi-

nent domain does not exist as a matter of comity between the States, and all hold, so far as we can find, that a foreign corporation must have affirmative authority from the State in which it proposes to exercise the right. " A railroad company or other quasi-public corporation can not exercise the right of eminent domain in another State than that by which it was created, unless it is expressly or impliedly authorized to do so by the laws of such other State.    Such power does not come within the rule of comity."   Clark & Mar. Priv. Corp. 2734, § 854.   Judge Thompson, in his excellent and valuable work on Corporations (vol. 6, § 7932) says :   " The power of a private corporation to acquire private property for the public purposes for which it may have been chartered is a power which comes to it alone through the delegation of the State of its sovereign right of eminent domain. The power can not, therefore, be exercised by a foreign corporation on a mere principle of comity, because it will never be presumed, in the absence of affirmative legislation, that the State delegates any part of its sovereignty to a foreign corporation.    It may be stated with confidence in every case that this power can not be exercised by a corporation created under the laws of one State or country, within the limits of another State or country, without the consent of the legislature of that other State or country, affirmatively expressed."    We are satisfied to close this part of the opinion with this authority from so eminent an author.

2.   The defendant in error claimed, however, that sections 650–657 of the Political Code are broad enough to include foreign corporations.    We think that they should not be so construed.    We think that the legislature can not be held to have granted the right of eminent domain, one of the highest of the sovereign rights of the State, to any and every corporation which may be created by any other State or country.    These sections must be construed strictly.    We can not believe that the legislature, by the use of the words *any corporation*, intended to confer part of the sovereignty of the State upon every corporation created in any State or country in the world which might be engaged in one of the businesses designated in these sections.    As Judge Thompson says in the quotation above, " it will never be presumed, in the absence of affirmative legislation, that the State delegates any part of its sovereignty to a foreign corporation. . . .

This power can not be exercised by a [foreign] corporation . . without the consent of the legislature, . . affirmatively expressed." Had the legislature intended to confer this power upon foreign mining corporations, it would have done so as it did in conferring similar powers upon foreign telegraph companies in the act of 1889 (Civil Code, § 2347), where it said: "Any telegraph company, chartered by the laws of this or any other State of the United States," etc. This last-cited act and code section expressly confer the power upon telegraph companies chartered by a sister State, which is an answer to the argument of counsel that the cases of *Savannah Ry. Co.* v. *Postal Tel.-Cable Co.*, 112 *Ga.* 941, 113 *Ga.* 916, and 115 *Ga.* 554, recognized that land in this State may be condemned by a corporation chartered by another State.

Our code declares that "any . . corporation who may be actually engaged in the business of mining" certain metals or minerals shall have the right to condemn private property. This language seems very broad, — broad enough to include both domestic and foreign corporations doing business of the designated kind in any State or country; but, as has been shown, statutes conferring the right of eminent domain must be construed strictly, and courts will never assume, in the absence of affirmative legislation, that it was intended to grant such powers to corporations over which the legislature had no control. Since the adoption of the Code of 1863, the legislature has reserved to itself the right to change or modify the charters of corporations of its creation, and to control the conduct of such corporations. It has no such powers with regard to a foreign corporation. In an act governing procedure or of a remedial nature, such words as are used in these code sections would probably be held to embrace all corporations, foreign and domestic; for such an act would receive a liberal construction. But acts granting powers in derogation of common right must always be construed strictly, and these words held not to include foreign corporations.

3. It was argued that the plaintiff had a complete remedy at law. After much reflection, we have concluded that the remedy at law was not as complete as the remedy in equity. The remedy at law pointed out by counsel for the defendant in error was for the plaintiff to go before the arbitrators and there make the questions raised by his petition in this case, and, in the event of

an adverse decision, to renew the points on an appeal to the superior court. In the first place, we think that the arbitrators could not entertain a motion to dismiss the condemnation proceedings on the ground that the gold mining company had no authority to institute them. Under the code the arbitrators' only duties are to pass upon the necessity for the condemnation and the amount of damage to the owner of the property condemned. Even if they could have decided as to the authority of the gold mining company to institute the proceedings and had decided in favor of such authority, and there had been an appeal to the superior court, the gold mining company could have tendered the amount of damages fixed and could then have proceeded to dig its ditches and divert the water, regardless of the appeal. Equity, on the other hand, immediately stops the illegal proceedings and prevents any illegal act. We think, therefore, that the remedy at law was not as complete as the one in equity. For the reasons given, we think that the court should have granted the injunction, and that it was error to refuse it.

*Judgment reversed. All the Justices concur, except Candler, J., disqualified.* ♦