## ROGERS *et al. v.* TOCCOA POWER COMPANY.

1. In a statutory proceeding brought by a purported corporation to condemn land for public purposes, the landowner can not question the legality of the charter of the corporation. Injunction is a proper remedy.
2. Prior to the passage and approval of the act of 1913 (Ga. Laws, 1913, p. 100) authorizing judges of the superior courts to grant charters to corporations in vacation, the judge of the superior court was without jurisdiction to grant a charter to a private corporation in vacation in a county other than that where the application was pending. An order purporting to grant a charter in vacation and in another county is a mere nullity.
3. Conceding, but not deciding, that under the facts of the case the Toccoa Power Company is a de facto corporation, it is not such a corporation as, under the law of this State, may exercise the right of eminent domain.
4. Where persons claiming to act as a corporation institute proceedings as a corporation to condemn private property for public uses, the legality of the charter may be attacked by any person whose property is sought to be taken, such persons not having recognized nor dealt with the corporation as such.
5. The court erred in refusing to enjoin the defendants from further prosecution of the condemnation proceedings.

No. 4974. JANUARY 13, 1926.

Petition for injunction. Before Judge Wright. Walker superior court. June 10, 1925.

*T. H. Crawford, T. A. Brown,* and *Morris, Hawkins & Wallace,* for plaintiffs.

*William Butt* and *Maddox, Matthews & Owens,* for defendant.

GILBERT, J. W. E. Rogers et al. filed a petition seeking to enjoin Toccoa Power Company from condemning described lands. The following resumé of the petition will be sufficient to clarify the controlling issues presented. There are numerous other allegations and issues which we deem it unnecessary to detail, because the case is controlled by the decision of the issues which will be presently stated.

---

Corporations 14 C. J. pp. 92, n. 42; 133, n. 40, New; 161, n. 47; 177, n. 21; 199, n. 75; 216, n. 1; 226, n. 95; 247, n. 80, 89; 14a C. J. pp. 1099, n. 72; 1135, n. 3; 1137, n. 21; 1150, n. 98, 16, New.

Eminent Domain 20 C. J. pp. 546, n. 26; 643, n. 84; 881, n. 89; 888, n. 56, New; 913, n. 33, 34, 35, 36, 37; 994, n. 42; 995, n. 43; 996, n. 46, 47; 1168, n. 65, New.

Evidence 23 C. J. p. 84, n. 7.

Judgments 34 C. J. p. 528, n. 14.

Pleading 31 Cyc. p. 95, n. 24.

It is alleged in the petition, that the defendant claims to be a corporation organized under the laws of Georgia; that the defendant has recently served notice of its intention to acquire by condemnation certain rights and easements in, to, and upon certain real estate in Fannin County owned by petitioners; that said notices show that the defendants propose to acquire "the right forever to flow back water over and upon that portion of the above-described property, also the right forever to enter upon and use the same in order to maintain said dam and the storage reservoir created thereby, or for other uses necessary to said purposes;" that said notices further show that defendant claims that as a corporation duly chartered for the purpose of constructing and operating hydro-electric plants, and being the owner of such water-power, it is vested with the power and authority under the Georgia laws to exercise the right of eminent domain and to condemn the private property of individuals; that the defendant is proceeding in the usual manner provided for such condemnation; that defendant is not entitled to condemn the lands of petitioners, for the reason that it is not a de jure corporation, in that it has never been legally created a corporation, petition for incorporation having been made by it to the superior court of Walker County, fixing its principal office and place of business in Walker County, the order granting said petition for incorporation having been made by the judge of the Rome Circuit in vacation while sitting in Floyd County; that under the law only corporations which have been regularly and legally created and organized, that is de jure corporations, are entitled to exercise the right of eminent domain; that in order for defendant to have obtained a legal charter under the petition for incorporation filed by it, the judge of the superior court of Walker County should have granted said articles of incorporation in term time and in the County of Walker, where the said petition for charter was filed and pending; that because this was not done the court was without jurisdiction; that, these facts appearing upon the face of the purported charter, it is null and void; and that petitioners are without an adequate remedy at law, since the issues made in the petition could not have been raised by way of defense to the condemnation proceedings.

The defendant denied all the material allegations of the petition, and insisted that, if not a de jure corporation, it was at least a de

facto corporation, and that as such it had the right to exercise the powers vested in it as a corporation, including the right of eminent domain, and to acquire by condemnation the lands necessary to carry out the purposes of its organization. The order granting the petition for incorporation was as follows: "State of Georgia, County of Walker. In the Superior Court of said County. Whereas W. E. Boileau . . [and others, and setting out the name of the proposed corporation, the amount of the capital stock, number of shares, the purposes for which the corporation was to be formed, and reciting that petitioners have complied with the statute in such cases made and provided, and upon hearing said petition, and the court being satisfied that the application is legitimately within the purview and intention of the law of Georgia]: It is hereby ordered and declared that said application be and the same is hereby granted, and the above-named petitioners and their successors are hereby incorporated under the name and style of the Toccoa Power Company, for and during the period of twenty years, with the privilege of renewal at the expiration of that time, according to the provisions of the law of this State, and said corporators and their successors are hereby clothed with all of the rights, privileges, and powers mentioned in said petition, and made subject to all of the restrictions and liabilities fixed by law. This the 17th day of March, 1913, at Rome, Georgia, during vacation. Moses Wright, J. S. C. R. C."

The plaintiffs have clearly stated their contentions under the various assignments of error, the first of which is as follows: "That the Toccoa Power Company is not such a corporation as is authorized, under the laws of Georgia, to exercise the right of eminent domain; that the order of the judge of the superior court granting its alleged charter, and upon which it relies to establish its corporate existence, is void upon its face; that at most, the Toccoa Power Company is only a de facto corporation and as such can not, under the laws of Georgia, condemn the private properties of petitioners for its uses." There are a number of other issues which, as said above, it is unnecessary to state.

1. In a proceeding under the Civil Code (1910), § 5240, for the purpose of acquiring private property for public purposes, the sole question to be passed upon by the assessors is the amount of compensation to be paid. In such proceedings the assessors can

not pass upon the legal power of the company to institute such proceedings. The remedy of the landowner is to apply to a court of equity to enjoin the condemnation proceedings, if they are unauthorized. *Atlantic & Birmingham Railroad Co.* v. *Penny,* 119 *Ga.* 479 (46 S. E. 665); *Atlanta Terra Cotta Co.* v. *Georgia Railway & Electric Co.,* 132 *Ga.* 537 (64 S. E. 563); *Harrold* v. *Central of Georgia Ry. Co.,* 144 *Ga.* 199 (86 S. E. 552). Therefore the proper remedy was sought in this case.

2. The judgment above mentioned, purporting to grant a charter to "Toccoa Power Company," shows by the caption that the petition was filed in Walker superior court, and that the application was pending in that county. It further shows that the judgment was rendered at Rome, Ga. This court will take judicial cognizance that Rome, Ga., is located in Floyd County. The usual and customary manner of showing in what county any proceeding in the superior court is pending is to state the county in the caption. The phrase, "This the 17th day of March, 1913, at Rome, Ga., during vacation," just preceding the judge's signature, leaves no doubt that the judgment was rendered in vacation in Floyd County. The judge could have meant nothing else by inserting the phrase just preceding his signature. The date of the judgment, "17th day of March, 1913," shows that the judgment was rendered prior to the passage and approval of the act of the General Assembly approved August 19, 1913, which authorizes judges of the superior courts to grant charters to private companies in vacation (Ga. Laws 1913, p. 100). Prior to the passage of the act just cited, judges of the superior courts possessed no power to grant charters in vacation nor in counties other than where the application was pending. The granting of charters to private corporations is the performance of a legislative power. Under the provisions of the Civil Code (1910), § 2823, the power of creating such corporations was delegated by the General Assembly to the "superior courts of this State." The act of the General Assembly approved August 19, 1913, above cited, provided that after the passage of that act the "judges of the superior courts of this State shall be authorized and empowered to grant charters to private companies in vacation at chambers, in the same manner and subject to the same restrictions as now provided by law for granting charters in term time." As the law stood at the time the judgment was

rendered, the charter to the Toccoa Power Company could only be granted by the "superior court." The law required the superior court of Walker County to be held at the county seat at the times prescribed by law. Civil Code (1910), §§ 4839, 4840; *Perdue* v. *State,* 134 *Ga.* 305 (67ʹ S. E. 810). "Where the record of a legal proceeding shows on its face that an order passed in vacation by the judge of the superior court is void for want of jurisdiction over the subject-matter, such order may be collaterally attacked at any time by any person who has not by his conduct estopped himself from questioning its validity." *Callaway* v. *Irvin,* 123 *Ga.* 344 (2) (51 S. E. 477); *Franklin County* v. *Crow,* 128 *Ga.* 458 (57 S. E. 784); *Harrell* v. *Whigham,* 147 *Ga.* 558 (94 S. E. 994). "A judgment that is void may be attacked in any court and by anybody." Civil Code (1910), § 5968; *Ellington* v. *Beaver Dam Lumber Co.,* 93 *Ga.* 53 (19 S. E. 21). The judge's order shows on its face a total lack of jurisdiction, and the judgment was wholly void.

Counsel for defendant in error state that the judgment rendered in vacation was "possibly irregularly granted," but that they do not consider this a "very material question," since the "highest courts of the various States, with but few exceptions," have held that a de facto corporation can exercise the right of eminent domain. Therefore it must be conceded by all that Toccoa Power Company is not a de jure corporation. It is agreed that the exact question has not been passed upon by this court. Plaintiff in error insists that only a de jure corporation can exercise the power of eminent domain. The Federal constitution, as well as the constitution of this State, guards strictly the taking of private property, and only permits it to be taken for public purposes after payment of just compensation and after due process of law is afforded the owner. Civil Code (1910), §§ 6388, 6688. Judge Warner, in *Young* v. *McKenzie,* 3 *Ga.* at p. 42, truly said that "the public good is in nothing more essentially interested than in the protection of every individual's private rights." In Wilkinson v. Leland, 2 Pet. 657 (7 L. ed. 542), the Supreme Court of the United States used the following language: "That government can scarcely be deemed to be free, where the rights of property are left solely dependent upon the will of a legislative body, without any restraint. The fundamental maxims of a free government seem to require that the rights of personal liberty and private property

should be held sacred.   At least, no court of justice in this country would be warranted in assuming that the power to violate and disregard them—a power so repugnant to the common principles of justice and civil liberty—lurked under any general grant of legislative authority, or ought to be implied from any general expressions of the will of the people." And thus we see that when it is sought to take private property for public purposes without the consent of the owner, there must be strict compliance with every requirement of law. 10 R. C. L. 196, § 168. "All grantees of land from the State, and their assigns, hold the same under this tacit agreement or implied understanding." *Young* v. *McKenzie,* 3 *Ga.* 31.

"The right of eminent domain is a sovereign right of the State. It is inherent in every sovereignty, and existed before constitutions were adopted. It lies dormant until the legislature sets it in motion. As the legislature can not in every case supervise the condemnation, it may confer the power upon agencies. These agencies may be individuals or corporations, and the legislature may even confer this power upon foreign corporations or individuals living in another State. The power thus conferred is always to be strictly construed, and will not be permitted to be exercised except where it is affirmatively granted. Its grant is in derogation of common right, and is the exercise of one of the highest of the powers of sovereignty. Where, therefore, a private individual or corporation seeks to take the property of another under the power of eminent domain, affirmative authority for the exercise of the power must be shown. The power may be conferred either by a special act creating the corporation or by general acts relating to all corporations of designated classes. If a foreign corporation undertakes in this State to condemn private property, it must show legislative authority to do so. We have searched the authorities diligently to ascertain if any court has ever decided that a foreign corporation could exercise the right of eminent domain without legislative authority from the State wherein it proposes to exercise the right, and have been unable to find a single case so holding." *Chestatee Pyrites Co.* v. *Cavenders Creek Gold Mining Co.,* 119 *Ga.* 354 (46 S. E. 422, 100 Am. St. R. 174). Certainly, if the power of eminent domain can not be exercised by a foreign corporation, it can not be exercised by an associa-

34

tion of persons who are not incorporated at all. A foreign corporation is at least an entity under the law of its domicile. A corporation depending solely upon a void judgment is not even an entity, but on the contrary is a nullity. The State can not delegate and does not undertake to delegate this extreme power to a mere name—the name must denote an entity. Until there is a charter there can be no corporation; nor can there be a corporation after the expiration or dissolution of its charter, not even a de facto corporation. In either case no judgment can be rendered for or against it. *Venable* v. *Southern Granite Co.,* 135 *Ga.* 508, 510 (69 S. E. 822, 32 L. R. A. (N. S.) 446), et cit. *Council* v. *Brown,* 151 *Ga.* 564, 567 (107 S. E. 867).

3. We will now examine the contention of the defendant, to the effect that the defendant is at least a de facto corporation, and that under the Civil Code (1910), § 5240, it has the right to prosecute the proceedings instituted. It has been well said in American Ball Bearing Co. *v.* Adams, 222 Fed. at p. 976: "There is no doctrine in corporation law which lacks more of precision of definition as to the principles upon which it proceeds, or as to what its boundaries are, than does this doctrine of de facto corporations. Courts have almost always contented themselves with deciding the case in hand, without attempting to formulate the general principle within which it fell, and text-book writers have treated the subject as 'a wilderness of single instances,' which it was hopeless to attempt to classify under general principles of decision." The defendant cites 20 C. J. 913, § 330 which states that "a petitioner seeking to condemn property as a corporation can not, of course, maintain the proceeding if it is neither a de jure nor a de facto corporation; and want of corporate existence, either de jure or de facto, may be urged by the owner in defense. . . In some States, petitioner must show that it has been organized according to statute,—that it is a corporation de jure; but in most jurisdictions it is sufficient if petitioner is a corporation de facto, the landowner not being entitled to question the regularity of the incorporation. *A charter void on its face, however, may be so declared in proceedings to condemn.* [Emphasis ours.] When an association has so far complied with the statute as to acquire corporate existence, its failure to comply with provisions as to organization which are merely conditions subsequent can not defeat its right to

maintain condemnation proceedings," etc. The brief also cites more than fifty cases which are collected in the footnotes to the above-quoted text. It will be impossible, within the reasonable limits of this opinion, to discuss all of these cases in detail. More than forty of them arose where the landowner sought to attack the power of the corporation in condemnation proceedings because of the alleged failure to acquire a legal incorporation. In many of these cases the statement was broadly made that a de facto corporation could exercise the right of eminent domain; but obviously these cases were decided in favor of the corporation because the landowner could not make such an attack in condemnation proceedings. Such would be the decision in this State, for, as we have shown in the first division of this opinion, the legal power of the corporation can not be attacked in a condemnation proceeding. In a number of the cases it was not denied that the corporations were organized in strict compliance with the law and were thus corporations de jure. In others it was directly ruled that a corporation de facto could not exercise the right of eminent domain. On the other hand a number of decisions are cited in the footnotes to support the text to the effect that only a corporation de jure can exercise the power of eminent domain. For a list of cases on both sides of the question we refer to 20 C. J. 913, 7 R. C. L. 68, 69, and notes. In Kinston & Carolina R. Co. v. Stroud, 132 N. C. 413 (43 S. E. 913), it was held that a charter void on its face may be so declared in proceedings to condemn. In 20 Harvard Law Review, beginning on p. 456, will be found a learned discussion on the subject of "Collateral Attack on Incorporation. A. De Facto Corporations." The notes to this discussion include a very large number of cited cases, both American and English. In fact the text-books and encyclopedias cite cases mounting into many hundreds. While the exact point, that is, whether a de facto corporation may exercise the right of eminent domain, has not been decided by this court, there are among its decisions cases wherein de facto corporations have been elaborately and learnedly discussed, and we deem it unnecessary to travel extensively outside of these decisions on the questions there dealt with. We need only mention *Georgia So. & Fla. R. Co.* v. *Trust Co., 94 Ga.* 318 (21 S. E. 701, 32 L. R. A. 208, 47 Am. St. R. 153), and *Brown* v. *Atlanta Ry. &c. Co.,* 113 *Ga.* 462 (39 S. E. 71). In the latter case Mr.

Justice Cobb divides corporations into three classes; corporations de jure; corporations de facto; corporations by estoppel. We will content ourselves with referring to that case for a definition of these terms, rather than to indulge in quoting to the length that would be required to reproduce what was there said. It is unnecessary to consider corporations by estoppel, because it is not contended in this case that any estoppel arose on account of the plaintiffs having dealt with the defendant as a corporation. · Moreover, it is generally conceded that corporations by estoppel are not based upon the same principles as are corporations de facto. The doctrine of de facto corporations has nothing to do with the principle of estoppel. Estoppel may prevail where there is no color of incorporation, or where the law under which the corporation claims to exist is unconstitutional or otherwise invalid. *Brown* v. *Atlanta Ry. &c. Co.,* supra, at p. 468. See also Hughes *v.* Farmers Union Produce Co., 110 Neb. 736 (194 N. W. 872, 37 A. L. R. 1314); 20 Harvard Law Review, 458. Conceding, but not deciding, that under the two decisions of this court just cited the defendant is, under the law of this State, a de facto corporation, nevertheless it has no power to exercise eminent domain, because we hold that it is not such a corporation as can exercise the power of eminent domain.

4. Another insistence of the defendant is that the legality of the incorporation can not be collaterally attacked. In other words, it is contended that when persons are using a name that purports to be a corporation, and under such name are proceeding to condemn private property of individuals to be used by the condemnors for public purposes, the landowner can not attack the legality of the incorporation. It seems to us that such a conclusion would leave the landowner in a position never contemplated by the makers of the constitution and laws of this State. Under the decisions of this court, if that contention is sound, the landowner would have no alternative save to submit to the condemning of his property, provided there was just compensation previously paid. It is true that our Code (1910), § 2226, provides: "The existence of a corporation claiming a charter under color of law can not be collaterally attacked. All who have dealt with the corporation as such are estopped from denying its corporate existence." That section is a codification of the universally accepted doctrine. The doc-

trine has sometimes been loosely applied. Like many rules of law of general application, instances arise upon which it has no bearing. Since the decision of the Dartmouth College case, the principle then announced that the grant of a charter to a private corporation constituted a contract between the State and the incorporators has been acknowledged in all of the States of the Union, including this one. The fact that the charter is a contract is alone a good and sufficient reason why persons not parties to the contract should not be allowed to attack its validity. That is the general rule applying to all contracts. The State being a party to the contract, it is for that reason, if for no other, a proper party to institute proceedings to attack its validity. A purported contract granting a charter may be void ab initio because of failure of the incorporators to comply with the law essential to its creation. In this instance no life ever entered into the purported charter. The charter may have been lawfully granted, but the time during which the charter was to extend may have expired. In that instance, all life having passed out, it is dead. Again, the charter may have been properly granted, but the corporation may have been guilty of conduct forbidden by law, of such character as would authorize the State to forfeit the charter. In such cases a stranger who has not dealt with the corporation, and who is not injured by any of its acts, obviously would have no right to go into the courts for the purpose of attacking the validity of the charter and to have it dissolved. That right belongs to the State. The State, having bestowed life upon the corporation and dictated what it could and could not do, also has the right to waive violations of the contract on the part of the incorporators. A leading and thoroughly considered case on this point is New York Cable Co. v. Mayor &c. of New York, 104 N. Y. 1 (10 N. E. 332). After the decision of the case there was a motion for rehearing, and on reconsideration of the case the court said: "It is claimed that this court overlooked the authorities cited on the appellants' points, to the effect that a defect in articles of association, or in the affidavits annexed thereto, is not fatal to the existence of a corporation or its faculty to acquire franchises, but that the State alone can interpose and take advantage of such defects. This court did not deem it necessary to comment in its opinion upon those authorities, for the simple reason that we did not deem them applicable to the case at

bar. In order to sustain proceedings by which a body claims to be a corporation, and as such empowered to exercise the right of eminent domain, and under that right to take the property of a citizen, it is not sufficient that it be a corporation de facto. In must be a corporation de jure. Where it is sought to take the property of an individual under powers granted by an act of the legislature to a corporation to be formed in a particular manner therein directed, the constitutional protection of the rights of private property requires that the powers granted by the legislature be strictly pursued, and all the prescribed conditions be performed. Where the power is conferred upon a corporation, duly formed, it will not be defeated simply because the corporation has done or omitted some act which may be a cause of forfeiture of its rights and franchises, for it rests with the State to determine whether such forfeiture will be enforced. Judicial proceedings are necessary to enforce such a forfeiture, and it may be waived. . . It was assumed that this distinction was well understood, and a considerable portion of the opinion of this court in the present case was devoted to showing that the omissions and defects in the organization of the company were failures to comply with the conditions precedent to the existence of the petitioner as a corporation, and the existence of the petitioner as a corporation, and the exercise by it of the right of eminent domain, instead of being mere causes of forfeiture of rights acquired." There was a distinguished array of counsel, who furnished elaborate briefs and citations of authority, as shown by the report of the case. Among the eminent counsel was William M. Evarts. The loose application of the doctrine that only the State may attack the legality of a charter has brought about a variety of contentions. "This doctrine has, save by confusion, nothing to do with the doctrine of de facto corporations. It is concerned, not with the manner in which corporate life may be gained, but with the manner in which corporate life may be lost. There is no defect whatever in the formation of the corporation; no one questions but that it came into existence; the only question is whether it still continues in existence. The use of this doctrine to support the contention that, if certain persons assume to have the right to act as a corporation, all but the State must submit quietly to their exercise of such usurped right, arises, it is not too much to say, from a profound misconception." Con-

sidering the code section as a whole, it is apparent that the principle which the codifiers had in mind was that persons who have dealt with a corporation as such are estopped from denying its corporate existence, and therefore such persons can not collaterally attack it; also, that if the corporation claimed a charter under color of law, the fact that it had been guilty of conduct such as would authorize the State to forfeit the charter, the State alone being authorized to make the attack and also being empowered to waive its rights, the corporation might proceed to exercise corporate powers within its legitimate sphere free from attack by individuals. "It would seem to be clear that there should be no sweeping doctrine to the effect that a de facto corporation may (unless checked by the State) exercise the same powers and privileges as a de jure corporation. The doctrine should never be applied, in favor of the associates themselves, to the prejudice of a person who has not dealt with them as a corporation." 20 Harvard Law Review, 472; *Academy of Music* v. *Flanders, 75 Ga.* 14. In this case it is not denied and could not be, that the plaintiffs, whose lands were sought to be condemned, were strangers to the condemnors; they had in no way dealt with or recognized the condemnors as a corporation; in an appropriate proceeding such as they have instituted they had the legal right to attack the power of the condemnors on the ground that they were not a corporation, and for that reason could not exercise the power of eminent domain under the statute of this State.　　　*Judgment reversed. All the Justices concur.*