PATTISON et al. v. FARKAS et al.

R. J. Bacon, for plaintiffs.

Leonard Farkas and W. H. Burt, for defendants.

BELL, Justice. On April 4, 1907, a charter was granted by the superior court of Dougherty county to "Albany Hospital Association," the name of which was changed, on April 8, 1921, to "Phœbe Putney Memorial Hospital Association." In January, 1935, Mrs. Eugenia G. Davis and others, by their attorneys Leonard Farkas and Walter H. Burt, filed in the superior court of Dougherty county an application to revive the charter of "the said Phœbe Putney Memorial Hospital Association." A few days after the filing of such petition John R. Pattison, Richard T. Pattison, and Mrs. Lucile Kirby instituted against such petitioners and their attorneys a suit to enjoin them from prosecuting the application to revive such charter, and for other relief. The court refused an interlocutory injunction, and to this judgment the plaintiffs excepted. The petition alleged many reasons why the application to revive the charter should not be granted and why an injunction to prevent the revival should be issued; but it is apparent from the record that the plaintiffs are utter strangers to the former corporation, and it is the opinion of this court that no right of the plaintiffs would be infringed by the granting of such revival. In this view, it is unnecessary to make specific reference to many of the contentions made by the plaintiffs.

The following is a sufficient statement as developed from the pleadings and the evidence: Thomas L. Pattison, a resident of Dougherty county, died on October 4, 1934, leaving a "purported will," to the probate of which the present plaintiffs, John R. Pattison, a brother, and Richard T. Pattison and Mrs. Lucile Kirby, children of a deceased brother, filed a caveat in the court of ordinary. By the terms of the will the testator gave all of his property for life to his sisters, Mary and Sarah Pattison, with remainder as follows: one half to the "Phœbe Putney Memorial Hospital of Albany, Georgia," and the other half to other charitable institutions named. The will was offered for probate by the two sisters

who were named as life-tenants, but the other beneficiaries, including Phœbe Putney Memorial Hospital Association, filed an intervention in the court of ordinary "for the purpose of joining in the prayers for the probate of the will in solemn form." This intervention, so far as it applied to the hospital association, was met by a plea in abatement filed by the caveators, alleging that the former charter of the association had expired by operation of law and has never been renewed, revived, or extended. The caveators also amended their original caveat by alleging that the devise to the hospital association was void because there was no such corporate entity or person as that designated, its charter having expired and not having been renewed or extended; that the failure of the devise to this association had the effect of destroying the whole testamentary plan and scheme; and that no part of the will can stand. The court of ordinary, "without considering the alleged invalidity of any devise," and passing solely upon the issue devisavit vel non, ordered that the will be admitted to probate in solemn form. No other proceedings were had in the court of ordinary. After the probate of the will the caveators carried the case by appeal to the superior court, where, at the time of filing the present petition, the contest in relation to probate was pending.

It was in this situation that the caveators filed the instant suit to enjoin revival of Phœbe Putney Memorial Hospital Association. It appears that by some rule or regulation of the hospital association Dougherty County and the City of Albany had been permitted, through the county and city authorities respectively, to appoint a designated number of persons as members of the board of control of the hospital association, and that at the time of filing this suit two members of the board of commissioners of Dougherty County and three members of the city commission were acting as members of the board of control under this arrangement. These persons were among the number who filed the application for a revival of the charter. The petition alleged, among other things, that "the purpose, scheme, and object of the said application for revival of charter is to procure [for applicants] some colorable standing in court as intervenors in the said contested-will case, and thereby to harass and annoy your petitioners, and to seek to oust them of their vested rights as heirs at law of the said Thomas L. Pattison as aforesaid, and to fortify themselves with a position not subject

to collateral attack; and that under the allegations of this petition it would be a legal fraud for the said defendants to obtain, by the granting of said charter-revival application, any standing in court under the said intervention in said will case, and it would be a legal fraud under the allegations of this bill should they obtain any colorable standing against petitioners as a revived corporation of the charter granted more than twenty-seven years ago which they seek now to revive." Also, "that the granting of said charter-revival application will result in a multiplicity of suits." The plaintiffs prayed that "said application for revival of the charter . . be restrained and enjoined;" that the members of the board of county commissioners of Dougherty County and of the city commission who are acting as members of the board of control of the hospital association be enjoined, as representatives of the county and city, from participating in the affairs "of the purported defunct corporation," it being alleged that the plaintiffs were taxpayers of the county and city respectively; that the plaintiffs' right and title "as heirs at law of Thomas L. Pattison may be decreed to have vested at his death," October 4, 1934, and "that defendants may be restrained and enjoined from in any wise contesting same or interfering therewith;" that the petitioners recover "such damages as may be shown on the trial of the case as the result of the illegal acts and doings complained of;" that "said defunct corporation of Phœbe Putney Memorial Hospital Association, as chartered as herein set forth, may be declared forever dead, defunct, a nullity from and after the 4th day of April, 1927, to this date and forever, and, if not as to all parties whatsoever, at least so far as concerns the property rights of plaintiffs as herein claimed and set forth;" and that "petitioners do have such other and further relief as to this honorable court may seem meet and proper." Other prayers of the petition need not be stated. In the bill of exceptions error was assigned, consistently with the contentions made in the petition, upon the court's refusal to grant an interlocutory injunction, and upon the admission of evidence in several instances over objection of the plaintiffs.

As indicated above, the plaintiffs were absolute strangers to the alleged "defunct corporation." They were not concerned as officers, stockholders, or creditors. Nor does it appear that as strangers they would be hurt by the granting of the application to revive the

charter. For the purposes of this case, we may assume that the charter can not be lawfully revived as attempted; and that if the plaintiffs were in a position to object, every contention made by them as to that question should have been sustained. The whole point is that the plaintiffs are injecting themselves into a matter in which they are either not interested, or as to which, if they have any right, they may adequately protect themselves in some other proceeding at the proper time. If the bequest to the purported association should prove to be inoperative for any reason, the presumption is that the executor will perform his duty and administer the estate according to law, and that in case of doubt he will seek direction from the proper court. Code of 1933; § 37-404; *Maneely* v. *Steele,* 147 *Ga.* 399 (94 S. E. 227); *Clay* v. *Clay,* 149 *Ga.* 725 (2) (101 S. E. 793); *Palmer* v. *Neely,* 162 *Ga.* 767 (5) (135 S. E. 90). At the same time, if these plaintiffs have any interest in the estate and it is in danger of loss or other injury, they may as against the legal representative appeal to a court of equity for a proper administration. Code of 1933, § 37-403; *Southwestern Railroad Co.* v. *Thomason,* 40 *Ga.* 408 (2); *Goff* v. *National Bank of Tifton,* 170 *Ga.* 691 (153 S. E. 767). They do not show any necessity for the aid of a court of equity at this time. The plaintiffs in their original caveat say that the will should not be probated; and it may never be. Cf. *Cathcart Van & Storage Co.* v. *Atlanta,* 169 *Ga.* 791 (151 S. E. 489). Even in case of ultimate probate, the judgment would not adjudicate the validity of any devise. *Wetter* v. *Habersham,* 60 *Ga.* 193 (9); *Trustees of the University of Georgia* v. *Denmark,* 141 *Ga.* 390 (2) (81 S. E. 238); *Walden* v. *Mahnks,* 178 *Ga.* 825, 830 (174 S. E. 538). Nor would any such matter be determined by the grant of the order reviving the charter. Where it does not appear that the complainant will be hurt by the action he seeks to prevent, an injunction will not be granted. *Reid* v. *Eatonton,* 80 *Ga.* 755 (6 S. E. 602); *McCaskill* v. *Bower,* 126 *Ga.* 341 (2) (54 S. E. 942). In *Richmond Cotton-Oil Co.* v. *Castellaw,* 134 *Ga.* 472 (67 S. E. 1126), it was held: "The owner or occupier of a lot in a town has no right, by reason of that fact, to have an injunction to prevent a railroad company, the line of which runs near his property, from allowing a house to be built and occupied by its licensee for the storage of cottonseed to be forwarded over its line of railway,

on the ground that such action is ultra vires of the company." By analogy the present plaintiffs could not enjoin the revival of the charter merely because of some alleged defect in that proceeding. Some right of the plaintiffs must be in danger of infringement. *Creswill* v. *Grand Lodge,* 133 *Ga.* 837 (2) (67 S. E. 188, 134 Am. St. R. 231, 18 Ann. Cas. 453). If the applicants were entitled to revival as a matter of law, the judge could not lawfully have granted an injunction. If in any view of the case the question fell within the range of judicial discretion, the refusal of an injunction in the exercise of such discretion would not be reversed by this court.

Finally, even though it might have appeared as a matter of law that the revival should not be granted if action to prevent the same had been taken by proper parties, the plaintiffs in this case, under the facts appearing, could not maintain the action. The plaintiffs inveigh strenuously against the last proposition. It is insisted that a revival would be retroactive and not subject to collateral attack. The petition alleged that the object of the application was to secure ground for some "colorable standing" in court in the contested-will case, and thereby to harass and annoy the plaintiffs in the assertion of their alleged rights as heirs at law of the testator. But even with supporting evidence, there would be no substance in this contention. Whether or not the doctrine against collateral attack could ever be applied against the present plaintiffs, where they do not deal with the applicants, or the thing created, as possessing the attributes of a corporation (see *Rogers* v. *Toccoa Power Co.,* 161 *Ga.* 524, 131 S. E. 517, 44 A. L. R. 534), the defendants can not be *enjoined* from prosecuting their application merely because the resulting corporate structure might not be amenable to such attack by strangers like the plaintiffs. That parties seeking incorporation or the revival of an expired charter may engage another in litigation on the granting of their application would not be, as to the latter, so portentous of injury as to justify an injunction against the prosecution of such application; and this is true regardless of the fact that infirmities therein might be so far cured by the grant of it as to preclude a collateral attack upon the entity or quasi entity so created. These circumstances would not establish in the objecting party such a right as should be protected by the grant of an injunction, if, indeed, it is not a clear

misnomer to speak of a *right* in such connection. Apparently, the chief aim and purpose of the plaintiffs is finally to avoid the purported bequest to the hospital association; but the present petition is not adapted to that end. It bears no remedial relation to the object in view. If the association was not qualified and can not qualify to receive the bequest, and if the plaintiffs are in position to raise the objection, they can not do so by killing off the efforts of the defendants to qualify. The question of ultimate qualification, if it ever arises, should be met directly at that time, and not by the premature and circuitous action attempted in this case. The plaintiffs can not prevent this association from reviving its charter, any more than they could stop other strangers from incorporating for any purpose. An action for incorporation should not be halted by a court of equity merely because the corporation, once it is created, is going to bring a lawsuit against some one. There is nothing to show a litigious disposition on the part of the defendants. In such case, is it not enough to wait and meet the issue on its merits when the suit is filed? We do not know of any principle of equity by which this question may be answered otherwise than in the affirmative.

The fact that members of the board of commissioners of roads and revenues of Dougherty County and of the commission of the City of Albany were serving as members of the board of control of the hospital association did not afford any ground of complaint to the plaintiffs. The petition alleged that the county and the city made regular contributions to the hospital for the use of indigent patients, but it is not claimed that such action was illegal or had any bearing upon the question of revival. As to this matter, the only prayer was that these individuals be enjoined as representatives of the county and city from participating in the affairs of the corporation. It does not appear that their *membership* on the board of control was intended to involve the county or the city in any manner, or that the relationships established thereby implied more than a personal interest and responsibility on the part of such members. As to this feature, it appears only that persons or individuals occupying public offices have agreed to act as members of the board of control, no official duty being involved. *Carter* v. *Janes,* 96 *Ga.* 280, 283 (23 S. E. 201). So, as taxpayers of the county and the city the plaintiffs did not show any cause for en-

joining the application for revival, even as to those applicants who happened to occupy an official relation to the county and the municipality. It is hardly necessary to cite the principle that the power of ordering injunctions should be prudently and cautiously exercised, and except in clear and urgent cases should not be resorted to. Code of 1933, § 55-108. In any view of the case, the judge did not err in refusing an interlocutory injunction.

*Judgment affirmed. All the Justices concur, except Gilbert, Justice, absent.*