STATE HIGHWAY DEPARTMENT *et al. v.* H. G. HASTINGS
COMPANY.

No. 12304.   October 13, 1938.   Rehearing denied November 25, 1938.

*E. Harold Sheals* and *Carl N. & Frank T. Davie,* for plaintiff in error.

*James A. Branch, Beck, Goodrich & Beck,* and *Thomas B. Branch Jr.,* contra.

JENKINS, Justice. ■ Irrespective of what other limitations may exist as to the right, under the Code, § 95-1505, to sue the State Highway Department alone or in connection with a county for special purposes (see *Hardin* v. *State Highway Board,* 185 *Ga.* 614, 196 S. E. 40; *Taylor* v. *Richmond County,* 185 *Ga.* 610, 196 S. E. 37), a suit for injunction, with proper facts and grounds authorizing such relief, will lie against the State Highway Department. *Tounsel* v. *State Highway Dept.,* 180 *Ga.* 112, 117 (178 S. E. 285); *Harrison* v. *State Highway Dept.,* 183 *Ga.* 290, 299 (188 S. E. 445).

■ The constitutional requirement that "equity cases shall be tried in the county where a defendant resides against whom substantial relief is prayed" (Code, § 2-4303) is not violated in "cases of injunction to stay pending proceedings," where, jurisdiction

having been acquired, it is provided by statute that "the petition [for injunction] may be filed in the county where the proceedings shall be pending, provided no relief is prayed as to matters not included in such litigation." Code, § 3-202. Accordingly, in this petition in Fulton superior court, against the State Highway Department and the members constituting the State Highway Board, to enjoin their prosecution of a condemnation proceeding pending in the same court, the residence of all the members of the board in other counties would not defeat jurisdiction of the court in the injunction suit. As to jurisdiction, where no injunction against a pending proceeding is sought, see *State Highway Dept.* v. *Marks,* 167 *Ga.* 397 (145 S. E. 866); *Railroad Commission* v. *Palmer Hardware Co.,* 124 *Ga.* 633, 647, 648 (53 S. E. 193). See also *Hutchinson* v. *Caldwell Lumber Co.,* 146 *Ga.* 356 (91 S. E. 208). This ground of demurrer was therefore without merit.

■ While it is the settled general rule that "equity will not enjoin the prosecution of an action at law because of certain matters which, if defensive to the right asserted in the action at law, are *as much available as a defense* in that action as in the equitable action" (*Reynolds Banking Co.* v. *So. Pacific Co.,* 140 *Ga.* 498 (2), 79 S. E. 132; *Hamilton* v. *First National Bank,* 180 *Ga.* 820, 825, 180 S. E. 840; *McCall* v. *Fry,* 120 *Ga.* 661, 663, 48 S. E. 200; *Northeastern R. Co.* v. *Barrett,* 65 *Ga.* 601), yet where in special or extraordinary proceedings, such as the condemnation of land under the Code, §§ 36-1104 et seq., or the cumulative statutory procedure for exercising the right of eminent domain (§§ 36-1115, 36-201 et seq.), the condemnor proceeds without authority of law, as under an unconstitutional statute (*Dennison Mfg. Co.* v. *Wright,* 156 *Ga.* 789 (4-a), 797, 120 S. E. 120), and where the condemnee does not estop himself by participation in the proceedings and acceptance of the award (*Bibb Brick Co.* v. *Central of Ga. Ry. Co.,* 150 *Ga.* 65, 102 S. E. 521; *Central of Ga. Ry. Co.* v. *Bibb Brick Co.,* 149 *Ga.* 38 (2), 99 S. E. 126), the condemnee is not fully protected by the mere filing of such a defense in the proceedings themselves, against the condemnor's right under the Code, § 36-602 to "pay or tender to the owner the amount of the award," and in case of refusal to "deposit the amount awarded with the clerk of the superior court for the benefit of the owner," and thereupon to enter on the land (*Oliver* v. *Union Point &c. R. Co.,* 83 *Ga.* 257

(4), 9 S. E. 1086; *Savannah, Fla. &c. Ry. Co.* v. *Postal Telegraph-Cable Co.*, 115 *Ga.* 554 (4), 561, 42 S. E. 1); and in view of the nature of the special procedure, an attack on the validity of the proceedings filed therein would not be "as available" as the equitable remedy. The remedy at law not being adequate and complete, a bill for injunction will lie. *Rogers* v. *Toccoa Power Co.*, 161 *Ga.* 524 (1, 5), 527 (131 S. E. 517, 44 A. L. R. 534), and cit.; *Chestatee Pyrites Co.* v. *Cavenders Creek &c. Co.*, 119 *Ga.* 354 (3), 357 (46 S. E. 422, 100 Am. St. R. 174); *Atlantic & Birmingham R. Co.* v. *Penny*, 119 *Ga.* 479 (4), 484 (46 S. E. 665); *Harrold* v. *Central of Ga. Ry. Co.*, 144 *Ga.* 199 (3), 204 (86 S. E. 552); *Denham* v. *State Highway Board*, 52 *Ga. App.* 790 (184 S. E. 631). Accordingly, this ground of the defendants' demurrer was properly overruled.

■ Under the condemnation statutes (Ga. L. 1914, p. 92; Code, §§ 36-1104 et seq.), the State has the right to file a condemnation petition; and "the State Highway Board can, in one proceeding, condemn a right of way" over several tracts of land, owned by different owners. *Cook* v. *State Highway Board*, 162 *Ga.* 84 (5, 7), 99, 101 (132 S. E. 902). These statutes giving such a right to the "State of Georgia," and the Code, § 95-1505, expressly empowering "*the Highway Department*" to "sue," the filing of the condemnation petition in the name of the "State Highway Department" instead of the "State Highway Board" did not invalidate the proceeding. This is true notwithstanding other sections of the Code, giving to the Highway Board authority to "condemn and acquire rights of way" (§ 95-1715), and to "exercise the right of eminent domain in the condemnation of rights of way and property thereon for the use of the system of State highways" (§ 95-1724), and other statutes providing that the "State Highway Department shall be managed and controlled by the State Highway Board" (Ga. L. 1937, p. 906, amending the Code, § 95-1601), and that "the Highway Board shall be the executive and administrative head of the State Highway Department, with full power and authority and in full control of the Highway Department and all road work and highway work within this State as provided for under Chapters 95-15 to 95-17" (§ 95-1606). The attack on the validity of the condemnation suit on the ground that it could be brought only in the name of the State Highway Board was without merit.

■ When the State or its authorized department files a petition for condemnation under the Code, §§ 36-1104 et seq., "the award or verdict . . shall have respect to the *entire* and unencumbered *fee, or* to *any separate* claim against the property or *interest* therein, as may be ordered, and *may be molded under the direction of the court* so as to do complete justice and avoid confusion of interests" (§ 36-1111). Under these express provisions, if it is necessary and proper to acquire "the entire . . fee," the right of the State is not necessarily limited to the restricted rights of other condemnors, under § 36-606, to "become vested with such interest in the property taken as may be necessary to enable the corporation or person taking to exercise its franchise or conduct its business; and whenever the corporation or person shall cease using the property taken for the purpose of conducting its business, said property shall revert to the person from whom taken, his heirs or assigns; but whenever a municipality condemns land for protection against floods and freshets, said municipality may acquire a fee-simple title to the property condemned on payment of the condemnation money." See *City of Atlanta* v. *Jones*, 135 *Ga.* 376, 378 (69 S. E. 571); *Atlanta, Birmingham &c. Ry. Co.* v. *County of Coffee*, 152 *Ga.* 432, 433 (110 S. E. 214). Accordingly, there is no merit in this ground of attack on the validity of the condemnation suit. Furthermore, assuming without deciding that the State in such a proceeding could not legally acquire a fee-simple title, the effort to do so would not wholly invalidate the proceeding so as to constitute a ground for injunction, but would be matter to be dealt with in the proceeding itself. See *Georgia Granite R. Co.* v. *Venable*, 129 *Ga.* 341 (2), 345, 347 (58 S. E. 864).

■ Dealing finally with the constitutional grounds attacking the validity of the condemnation proceeding and of the act involved, art. 1, sec. 4, par. 1, of the constitution provides that "no special law shall be enacted in any case for which provision has been made by an existing general law." Code, § 2-401. Under this prohibition, "a general law may be repealed or modified by another general law, but it can not be repealed or modified by a special or local law." *Stewart* v. *Anderson*, 140 *Ga.* 31 (78 S. E. 457); *Cheatham* v. *Palmer*, 176 *Ga.* 227, 234 (167 S. E. 522); *Parrish* v. *Savannah*, 185 *Ga.* 828, 832 (196 S. E. 721). Therefore, in so far as a prior general law may control the methods of opening and

laying out roads throughout the State, a conflicting special act of the legislature would be unconstitutional. *Shore* v. *Banks County*, 162 *Ga.* 185, 187 (132 S. E. 753).

■ ■ The acts of 1919 (Ga. L. 1919, pp. 247-249) and 1929 (Ga. L. 1929, pp. 263-268), as amended (see editorial note, Code Ann. § 95-1708), and as they appear in the Code, §§ 95-1608 and 95-1701 et seq., were re-enacted in the adoption of the Code. Ga. L. 1935, p. 84. These codified statutes provide a uniform method of establishing "State-aid roads" throughout the State, and are manifestly general laws. The act here in question, approved March 22, 1937 (Ga. L. 1937, p. 995), designated as the "Fulton County Broad Street Extension" act, is a special law, since its provisions relate only to certain streets in the City of Atlanta and to Fulton County; and hence any conflict in its provisions with provisions of general law would contravene the constitution.

■ By the general laws last mentioned, "no road shall become a part of the State-aid system *until the same shall be so designated by the State Highway Board* by written notice to the county road authorities concerned" (Code, § 95-1705) ; "a system of State-aid roads . . shall be designated, constructed, improved, and maintained by the State through the State Highway Department, under the provisions of law" (§ 95-1701) ; "the State-aid system shall consist of such roads as have been, or may be, authorized by law *and designated by the State Highway Board as provided in*" the Code, § 95-1705, and "the State Highway Board shall exercise its best judgment as to when and in what manner such roads shall be completed and paved, and no additional maintenance cost shall be added until such roads shall have been located and constructed" (§ 95-1711) ; "the State Highway Department shall have the right to resurvey and relocate in their entirety any or all of said roads, keeping in view only the control points" (§ 95-1708) ; and "the State Highway engineer shall prepare a report or reports, accompanied by maps, setting forth the roads authorized by law *and designated by the State Highway Board as a part of the State-aid system, for approval by the board,*" and *"when duly approved by the board,* the maps shall be filed with the Secretary of State as the authoritative record of such State-aid roads, and copies shall be furnished to the counties concerned" (§ 95-1608). By the special act the proposed extension of Broad Street and the inclusion of

this extension and other mentioned streets in Atlanta as a part of the "State-aid system of roads" is made finally effective without regard to any designation by the State Highway Board, or the exercise of its discretion therein. Under section 2, "the State Highway Board" is not only "authorized" and "empowered," but *"directed* to certify said road as a part of the State-aid system, and to lay out, establish, construct, and . . procure rights of way over that portion of said road to be extended and opened." Ga. L. 1937, p. 996. Nowhere in the act is there given or recognized any authority or discretion in the board; and they are required to proceed even though, but for the mandatory provisions of the act, they might disapprove or decide to the contrary. Therefore the special act is unconstitutional in that it takes away from the Highway Board their right and duty, under the express provisions of general law, of "discretionary action . . in designating and locating a State-aid road, within the sphere of their legally delegated powers." See *Jackson* v. *State Highway Dept.,* 164 *Ga.* 434 (4) (138 S. E. 847).

(*a*) Since on demurrer the averments of the petition must be taken as true, and it was alleged only that the condemnation proceeding was brought by virtue of the special law in question, the validity of that proceeding, as against the constitutional attack, can not be sustained on the contention that the Highway Board, in filing the proceeding, were in fact legally exercising their discretion in designating the new project as part of the "State-aid system," instead of merely obeying the mandate of the special law.

(*b*) For the same reason, the validity of the condemnation can not be sustained on the theory that it was properly brought by authority of the recent general act approved March 29, 1937 (Ga. L. 1937, p. 1081), providing as to streets of municipalities becoming a part of the "State-aid system." Although that act makes city streets "forming a continuation of or a link in the State-aid system of roads . . a part of the State-aid system . . for the purposes of construction and maintenance thereof by the State Highway Board," it also requires that the board shall first determine what "streets or parts of streets" are "deemed necessary by said board" for such construction; and it further requires that "the State Highway Board shall *determine and designate which* of said streets or parts thereof *shall constitute* a part of the State-aid sys-

tem," and thereupon notify the mayor or other like chief executive. The petition fails to indicate that the board, in filing this condemnation, were acting either generally under this law, or had followed any of the quoted particular provisions as to their determination, designation, and notice with regard to the project involved.

(c) Since it does not appear that the Highway Board exercised any discretion in designating the proposed extension as a part of the "State-aid system" of roads, as provided by general law, no question here arises or is determined as to the effect on the pending condemnation proceeding or any future like proceeding, if the Highway Board actually had or should legally exercise such discretion, independently of the invalid special law on which it must be taken on demurrer to have been based.

(d) It is further contended that there are numerous legislative acts, adding new roads to the "State-aid system," which have customarily been expressed in the "exact language" of the "Broad Street Extension" act; that all of the acts are valid; but that to declare the act involved unconstitutional would nullify all of this similar legislation. The other acts not being here involved, no question as to their validity is presented or decided; and any reference thereto would be irrelevant, unless there should appear therein some expression of the legislative intent or recognition of the authority or duty of the State Highway Board in the designation of new roads as part of the "State-aid system," which would thus aid in the construction of the laws under consideration. An examination of those acts discloses, not only wide differences between their language and the language of the act involved, but a continuous expression and recognition by the legislature of the board's power and duty to exercise its discretion in making such designation. While the "Broad Street Extension" act wholly fails either expressly or impliedly so to provide or recognize, such acts do so by either express language or clear implication.

Thus, since the adoption of the new Code, in the acts from 1935 through the extra session of 1937-1938, many of those laws, after describing the new local roads to be added to the "State-aid system," expressly state that "said State Highway Department is hereby authorized [but not directed] to amend the map showing the highway mileage and State-aid System now in force ·in this

State, so as to show on said map the said road," but that "this act shall be construed as permissive in its effect only, and not mandatory;" or such similar language as that "this bill shall not be mandatory, and the road mentioned herein shall be placed on the highway system only when certified by the State Highway Board;" or that "this bill shall be permissive only, and the State Highway Board *may* certify this added mileage or any portion of the same as provided in said act of 1929;" or that "this act shall not have the effect of certifying said proposed road into the now State-aid System of Georgia until certified by the State Highway Board of Georgia as a part of the State-aid System in a manner now provided by law;" or that "the purpose of this act is to give the State Highway Department the authority to legally designate said roads as a part of the State-aid System whenever it sees fit to do so, in its discretion;" or that "the State Highway Board be and it is hereby authorized to certify said roads or any part thereof into the System of State-aid Roads at such times as in its discretion it deems proper;" or that "the State Highway Board is hereby authorized and empowered [but not directed] to certify said road as part of the State-aid System in the way and manner provided by law." Others of those laws, without or in addition to language such as that above quoted, provide: that "by the addition to said map [the original system appearing in the map contained in Ga. L. 1929, p. 268], and placing of said road on said map, there arises no obligation, either express or implied, that the State of Georgia or the Highway Department of Georgia shall be responsible for maintenance of said road, nor shall the addition of said road to said map entitle the county in which said road is located to receive its pro rata part of the first gasoline tax allocated to said county as to said road hereby added to said map, *unless and until* said road is formally designated as a State-aid Road by the State Highway Board of Georgia by appropriate action as now provided by law, and a map showing said road thereon be filed with the Secretary of State as provided;" and "it is the purpose of this act to give to the State Highway Department of Georgia the right and authority to *legally designate* said road . . as a State-aid Road, and *if and when said road is so designated* by said State Highway Department of Georgia, said road shall not be considered a part of the 500 miles allowed in addition to the mileage shown on said map

as provided in said Traylor-Neill bill," the act of 1929 last mentioned (or slightly varying the last-quoted provision); *"and when so designated,* to have such status and to be accorded such rights as State-aid Roads heretofore adopted *and designated;"* or very similar language. See Ga. L. 1935, pp. 179-307; Ga. L. 1937, pp. 918-1098; Ga. L., Ex. Sess. 1937-1938, pp. 430-660.

■ The special "Broad Street Extension" act is in further conflict with the general law and in contravention of art. 1, sec. 4, par. 1 of the constitution (Code, § 2-401), for the additional reason that under the act of 1935 (Ga. L. 1935, p. 160; Code, § 95-1721), in the establishment and construction of any road "approved as a part of the system of State highways," it is made "the duty of county commissioners or other county authorities having control of county roads to assist in procuring the necessary rights of way as cheaply as possible, and *all expenses thereof,* including the purchase-price of any land purchased for a right of way, and all direct and consequential damages awarded in any proceeding brought to condemn any such right of way, *shall be paid by the county* in which such road is situated *out of the county treasury:* provided, that *nothing* contained in this section *shall prevent* the State Highway Board from using State highway funds for the purpose of purchasing rights of way, or to pay the purchase-price thereof, or to pay any damages awarded on account of the location of any such State-aid road, or from assisting the counties in so doing." The special act conflicts with these provisions. The act requires the Highway Board to "bear *all expenses* connected" with the project, save only a mere permission, without obligation, that the Fulton county commissioners *"may* contract with the State Highway Department for the construction of any portion . . in payment of part or all of the expenses of securing rights of way." As the record does not indicate that the Highway Department was proceeding otherwise than under the invalid special act, no question here arises or is determined as to the effect on the pending or any other condemnation proceeding, if in the procuring of rights of way for the project, the department and board had legally proceeded or should legally proceed under the general law, independently of the special act.

■ The petition sufficiently showing that the condemnation

proceeding was brought under an unconstitutional act, the court did not err in overruling the general demurrer.

*Judgment affirmed. All the Justices concur.*

### ON MOTION FOR REHEARING.

JENKINS, Justice. The State Highway Department seeks a rehearing on two grounds: (1) That this court overlooked provisions in the condemnation statutes, and particularly Code §§ 36-1106, 36-1115, in holding that if the Highway Department was proceeding under an unconstitutional law, the remedy of the present petitioner as a defendant in the condemnation proceeding not being adequate and complete, the petition for injunction would lie. (2) That this court overlooked averments in the petition; that the Highway Department was proceeding, not under any invalid law, but under the condemnation statutes, Code, §§ 36-1104 et seq.; that the general act of March 29, 1937 (Ga. L. 1937, p. 1081), as to municipal streets or parts of streets becoming part of the State-aid system of roads, authorized the State Highway Department to condemn land in municipalities; that "under the terms and provisions of section 36-1104 of the Code . . the conclusion is inevitable that the State Highway Department could have, in the condemnation proceedings in question, been proceeding under such law;" that the court overlooked the holding in *Dennison* v. *Wright,* 156 *Ga.* 797 (supra), although it cited the case, that "an unconstitutional statute . . is in reality not law—it is wholly void;" and overlooked the effect of the decision in *Wellborn* v. *Estes,* 70 *Ga.* 390, that proceedings under an unconstitutional statute, had before the statute is judicially declared to be unconstitutional, are void; and overlooked the fact that the Highway Department, being conclusively presumed to know the law, was conclusively presumed to have known that the "Broad Street Extension" act was unconstitutional and void, and therefore must be conclusively presumed to have been proceeding in the condemnation case under a valid general law, and not under an invalid special law.

As to the first of these contentions, reference to the division 3 of the original opinion shows that the general condemnation statutes and the authorities contained in the supporting briefs were considered and discussed, together with additional cases, upon a full consideration of all of which the conclusions stated in the original decision were reached.

As to the second contention, relating to paragraphs 8-*a* and *b* of the decision, that the present injunction petition shows that the Highway Department was proceeding legally, a reference to the pleading fails to support this contention. Paragraph 7 of the present petition quoted in full the invalid "Broad Street Extension" act. Paragraph 8 then alleged: "The Highway Department of Georgia, acting, or claiming to act, *under and by virtue of the provisions of the act of the General Assembly above set out,* did . . file in this court a proceeding in rem, seeking to condemn a right of way for said so-called "Broad Street Extension" provided for in said act. Paragraph 11 stated: "Said condemnation proceeding, which was instituted as aforesaid and which is pending, was brought, as stated in the petition, under the provision of the Code of Georgia of 1933, sections 36-1104 et seq." Paragrap 15 alleged: "The defendants, as hereinbefore stated, are seeking and purporting to proceed in their effort to condemn petitioner's property above described . . . *by virtue of the provisions of said act approved March 22, 1937, set out in paragraph 7 above;* and inasmuch as said act is unconstitutional and void, said defendants are acting in said matter without legal authority."

The general condemnation statute (Code, § 36-1104), merely provides for procedure by petition, "whenever the State . . shall desire to take or damage private property *in pursuance of any law so authorizing.*" When the Highway Department thus proceeded, it must therefore have done so by virtue of authority conferred by some other general law or some valid act relating to the particular project. While it must be presumed, in the absence of a contrary showing, that the Highway Department and board, like all other officers, know the law and have done their legal duty, such a presumption can not prevail over specific averments otherwise, where, as in this case, it was alleged, not merely that the Highway Department filed the condemnation proceeding under the general condemnation statutes, but that, in following such procedure they were "acting or claiming to act under and by virtue" of the law which this court in the original decision held unconstitutional, and "are seeking and purporting to proceed in their effort to condemn petitioner's property . . by virtue of such act," and "inasmuch as said act is unconstitutional and void, said defendants are acting in said matter without legal authority." The averments them-

selves in the condemnation proceeding not being in the record, it must be assumed on demurrer that these clear and direct allegations of the injunction petition as to the action of the Highway Department "under and by virtue" of the invalid act are correct. Accordingly, no question arises or is determined, either on this motion or in the original decision, as to what would have been the effect if the Highway Department had actually proceeded, as contended, under the act of March 29, 1937 (Ga. L. 1937, p. 1081), providing as to how streets of municipalities may be made a part of the State-aid system of roads, or whether that act or some other law would have authorized the procedure taken.

*Rehearing denied.*